STATE OF MINNESOTA v. JOHN NESTAVAL.

June 2, 1898.

Nos. 11,107—(20).

72  415
73  102

**Bastardy — Credibility of Complaining Witness and Defendant — Charge of Court.**

In bastardy proceedings it is fatal error for the court to instruct the jury that, "so far as the pecuniary interest in the result of this suit is concerned, the complainant and the defendant are not equal, the defendant having a direct pecuniary interest in it, and the complainant having none." Their credibility as witnesses was exclusively for the jury.

Appeal by defendant from an order of the district court for Le Sueur county, Cadwell, J., denying a motion for a new trial. Reversed.

*Charles G. Kolars*, for appellant.

*P. J. Kirwin*, County Attorney, for respondent.

BUCK, J.

The defendant, Nestaval, was arrested upon the complaint of Mary Mach, an unmarried female, charging him with being the father of an unborn child, with which she was pregnant, and which, if born alive, would be a bastard. The proceeding was had under G. S. 1894, c. 17. The trial from which this appeal is taken was had before a jury in the district court of Le Sueur county. The defendant denied the charge in the complaint, but was found guilty by the jury, and he moved to set aside the verdict and for a new trial for errors of law occurring at such trial. This motion was denied by the court.

The error alleged arises upon that part of the charge which is as follows:

"Another consideration which you may properly take into consideration is what motive a witness may have for testifying falsely so far as it appears from the evidence in the case; and one motive which is sometimes an inducement to misrepresent is the pecuniary interest which a witness may have in the result of the suit. That is one motive which may actuate and prompt men and women to make false statements and give untrue testimony. So far as the pecuniary interest in the result of this suit is concerned, the com-

plainant and the defendant are not equal, the defendant having a direct pecuniary interest in it, and the complainant having none. I do not mean by what I have stated as to the pecuniary interest of the complainant and the defendant to instruct you that the complainant has told the truth, and the defendant has told an untruth, or the reverse. I leave it to your judgment. It is a matter solely for your judgment. I simply call your attention to the motive which the defendant might have. So far as the pecuniary interest is concerned, in the result of this suit the parties do not stand equal."

At common law the putative father is under no legal liability to support his illegitimate offspring. Schouler, Dom. Rel. § 279; 3 Am. & Eng. Enc. (2d Ed.) 889. And, as against the mother of a bastard child, the putative father has no legal right to its custody, but the mother, as its natural guardian, is entitled to its control, and is bound to maintain it. 3 Am. & Eng. Enc. (2d Ed.) 889, and authorities there cited. In contemplation of the common law, an illegitimate child was designated as nullius filius, son of no one, and therefore had no father who was bound to support it or could rightfully claim its care and custody. The sworn father is called the "putative father" because he is supposed to be the father of the illegitimate child; but there can be no doubt as to who is the mother, and hence the mother, as guardian by nurture, has the right to the custody and control of her bastard child until it shall have attained an age when, in contemplation of the law, it can make an election between father and mother; but in the meantime the legal obligation of supporting it devolves upon the mother. This, of course, involves a pecuniary responsibility. Board and clothing must be furnished, lest the unfortunate child suffer, and the maternal instincts of the erring mother lead her to care and provide for her illegitimate offspring.

The statute law, more humane in its provisions than the common law, aids her in this respect. It is true that the statute makes the putative father one in law for a particular purpose, viz. for the indemnity of society against the expense of the support of the child, and upon complaint of the mother or certain designated public officers an inquiry may be had as to the identity of the putative father, and upon sufficient proof he may be adjudged to pay a cer-

tain amount in support of his illegitimate child, or be imprisoned in default thereof. G. S. 1894, § 2041, provides:

"If such accused person pays or secures to be paid to the female complaining such sum of money or other property, as she may agree to receive in full satisfaction and as is approved by the commissioners of the county, of which agreement and approval the justice shall make a memorandum upon his docket, and shall also pay all expenses, if any, incurred by such county for the lying-in, and support and attendance upon the mother of such child during her sickness, and the costs of prosecution, and shall also give bond with sufficient sureties, to be approved by the justice, to the commissioners of the county in which such female resides, and their successors in office, conditioned to secure and indemnify such county from all charges for the maintenance of the child born or that may be born, the justice shall discharge such accused person."

If the trial is in the district court, and the accused is found guilty, he shall be adjudged to be the father of the child, and be charged with the maintenance thereof in such sum or in such manner as the court may direct. G. S. 1894, § 2044.

It was decided in State v. Zeitler, 35 Minn. 238, 28 N. W. 501, that the trial court might make a reasonable allowance for the past as well as the future maintenance of the child, including lying-in expenses, to be paid the mother for her use when not paid or incurred by the public. If the accused refuses to give a bond for the performance of such judgment or order, he may be imprisoned; but after 90 days' imprisonment, on verified petition that he is unable to comply with such order or judgment, he may be discharged from such imprisonment; but by section 2049 of such statute the mother of such child may, at any time after the discharge of such prisoner, recover by action any sum of money which ought to have been paid to her by him in pursuance of such judgment and order of the court. Now, with these rights, duties, and obligations pertaining to the mother and father of a bastard child, how can it be reasonably said that the complaining mother has no pecuniary interest in the result of the suit. One of the objects of the statute is to compel him to pay to her such sum of money or other property as she may agree to receive in full satisfaction. Such is the language of the statute. And he must pay her for her use, not only the lying-in expenses, but a

72 M.—27

reasonable allowance for the past as well as the future maintenance of the child. So said this court in State v. Zeitler, already cited. And finally, after his discharge from imprisonment, she may sue him, and recover by action any sum which ought to have been so paid her by him.

No matter if the state is the proper party plaintiff, and the one which is seeking to enforce upon the putative father of a bastard child a duty to maintain and furnish it adequate support and indemnify it against its becoming a public charge. Whether her testimony is voluntary or enforced is of no consequence. If it helps the state in its protective policy and police power, she is, under the statute, entitled to its benefit, which provides for her reimbursement for her past expenses and future maintenance of her bastard child. But, as a witness, she comes before the court in no better and no worse position than the accused. He is seeking to avoid a pecuniary liability, and she is seeking to enforce one, or, at least, is testifying to a state of facts which, if believed by the jury, entitles her to do so. If the state succeeds, she gets the money or property in part, and is relieved from the support of the child. His loss is her gain. This makes her interest a direct pecuniary one.

It is not a question as to who is or ought to be a party plaintiff. The proceeding in this respect is fixed by the laws of the state. The consideration recovered against defendant in the name of the state or by its action does not belong to the state. It is not a speculative creditor, seeking to recover a debt, money, or property which shall become a state fund, but the amount recovered goes directly to the mother of the child for her past expenses in the matter, and for future expenses of maintenance of the child. She is presumed to know the law in this respect, and with this knowledge she goes upon the stand as a witness, and this pecuniary interest may affect her credibility as much as though she was a party plaintiff. Even if she were such party, and hence strictly a party in interest, in form and in fact, she could not be any more interested in the sum to be recovered than she would be when a witness. In either case she has a direct pecuniary interest in the result. The pecuniary motive or inducement therefore, on her part, to testify strongly

against the defendant is fully as great when she is a witness for the state as it would be if she were a party herself.

The proceeding is a civil, and not a criminal, one. It is true that the defendant may be imprisoned if he does not pay the judgment rendered against him, but this is not done as a punishment for a public offense, but by reason of his neglect or refusal to pay a pecuniary liability imposed by the order or judgment of the court, and which, if not paid, might leave the public chargeable with the necessary support of the illegitimate child. But neither the common law nor statute law permits the mother of a bastard child to sue the putative father as plaintiff in her own name in the first instance, for its support, even if she so desires. The humane legislative enactment steps in, and does for the mother and bastard child what the rigor of the common law would not permit. It provides that the unfortunate minor bastard child shall be supported by its putative father, and he be compelled to do so; but when it institutes an action in its own name, and for the benefit of the public, and at the same time gives to the mother, as its complaining witness, a substantial part of the sum or property recovered, it cannot be heard to say that such witness is not pecuniarily interested.

It is right that she should have a direct pecuniary interest in compelling the putative father to support such bastard child. But he should not be made liable upon an erroneous theory of the law or charge of the court as to the credibility of the complaining witness and defendant, by its saying in this respect they do not stand upon equal terms. Now, when the court charged the jury that, "so far as the pecuniary interest in the result of this suit is concerned, the complainant and the defendant are not equal," he clearly invaded the province of the jury. Even if their pecuniary interests were somewhat different in the result of the suit, still the credibility of each was in this respect a question of fact for the jury to determine. In the recent case of Roberts v. State, 84 Wis. 361, 54 N. W. 580, the supreme court of Wisconsin held that in bastardy proceedings it is a fatal error for the court to instruct that the complaining witness and defendant are not of equal credibility, as the matter is exclusively for the jury.

The error in the charge of the court was not cured because there

was evidence corroborating that of the complaining witness. It was not the duty of the jury to count the number of witnesses, and render a verdict in accordance with the majority of them, but to weigh the testimony, and render a verdict accordingly. Van Doran v. Armstrong, 28 Wis. 236.

The cases of McClellan v. State, 66 Wis. 335, 28 N. W. 347, and Kenney v. State, 74 Wis. 260, 42 N. W. 213, are cited by respondent in support of his contention that in bastardy proceedings the mother and the defendant are not of equal credibility as witnesses, the latter having a pecuniary interest in denying the paternity of the child. We have carefully examined those decisions, and, while they bear out the contentions of the respondent, the reasoning by which such results are arrived at is entirely unsatisfactory, and we think unsound.

Order reversed.