**Rose Marie MOREY, Petitioner, Respondent,**

v.

**Gilbert PEPPIN, Appellant.**

**No. C1–83–1835.**

Court of Appeals of Minnesota.

Aug. 7, 1984.

Joanne Thatcher Swanson, St. Paul, for respondent.

C.J. Knippel, Rischmiller, Wasche & Knippel, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG, and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Gilbert Peppin appeals from an order granting Rose Marie Morey sole legal and physical custody of Chad Morey, their son. Peppin maintains the trial court erred in failing to hold an evidentiary hearing before awarding custody of Chad to Morey. Peppin also claims the trial court erred by not making specific written findings reflecting consideration of statutory factors relating to the best interests of the child as set forth in Minn.Stat. § 518.17(1) (1982). He also contends the trial court abused its discretion in failing to order a custody investigation and in failing to order the production of mental health records pertaining to Rose Marie Morey and her children for discovery prior to the hearing.

We affirm in part and remand the case for an evidentiary hearing.

## FACTS

Rose Marie Morey gave birth to the parties' son, Chad Wayne Morey, on January 25, 1980. Peppin and Morey never married. Peppin formally acknowledged paternity at once, however, Chad remained in his mother's care without interruption from the time of his birth. Peppin had regular visitation rights. Rose Marie also had a 10-year old daughter by a previous marriage but she has not had custody of this child since December, 1982.

Following Chad's birth, Morey obtained financial assistance from Dakota County Aid to Families with Dependent Children. In January, 1981, Peppin entered into an agreement with Dakota County whereby he would pay to them the sum of $150 per month in partial reimbursement for assistance provided to Rose Marie and Chad. Peppin's parentage of Chad was adjudicated in December, 1980.

The custody of Chad was never in dispute until Morey brought a motion to remove Chad from Minnesota to Colorado for purposes of accepting an offer of employ-

ment and to obtain an order declaring her sole legal and physical custody of Chad.

After requesting and receiving her permission, Peppin reviewed Morey's medical records, including those of physicians and hospital staff.

Subsequently, Peppin moved for a change of custody to himself or, alternatively, for joint custody to the parties. The motion also requested an order of the trial court to require a mental health professional to produce all of his records concerning counseling sessions held with Rose Marie, Chad, and her daughter. Peppin submitted an affidavit stating that respondent goes out frequently, leaves the child with babysitters for extended periods of time, and has a long history of serious physical illnesses and emotional instability. Peppin claimed medical reports characterized Morey as a "child abuser."

Appellant also submitted to the court an affidavit of an intermittent live-in babysitter for the last ten years who said she observed conduct of respondent that was harmful to her children.

In response Morey moved the trial court for an order finding that she had been the legal and physical custodian of the child since birth. She presented to the court affidavits of her ex-husband, her stepparents and herself to counter appellant's allegations. Peppin then moved the trial court for a finding that no previous order existed concerning custody of the child. He requested a custody investigation by the Dakota County Department of Court Services and sought other relief.

On August 26, 1983, at a scheduled hearing on the various motions, the court proceeded to discuss the case with the parties' attorneys in his chambers.

Respondent renewed her objection to Peppin reviewing requested reports relative to counseling on the grounds that the counseling was intended for the benefit of the daughter and had no relevance to the issues before the court.

The trial court stated that it would obtain and review the documents and determine what relevance they had to the proceedings at hand. The court also stated that these documents would be made available in chambers for review by counsel. The court did not receive the documents as expected.

On October 18, 1983, the trial court issued an order awarding the sole legal and physical custody of the child to respondent, ordering child support in the amount of $150 per month, denying Morey's request to remove Chad from Minnesota without a specific court order, and requiring Peppin to pay Morey's attorney the sum of $300.

Subsequently, Peppin appealed this order and submitted a statement of the proceedings to the trial court, which approved the statement subject to comments and including a letter from the mental health professional who had provided counseling to respondent. The letter explained why Morey's records had not been supplied to the trial court. The counselor said he had received a subpoena and a phone call from Peppin's attorney stating that he did not want a written report but requested all case records stated in the subpoena. Because the counselor did not have permission from Rose Marie Morey to release more than a written report, no return was made in the subpoena. No court hearing was held in which the mental health person could be questioned.

## ISSUES

1. Did the trial court err in awarding legal and physical custody of the minor child without holding an evidentiary hearing?

2. Did the trial court err in not making findings showing consideration of statutory factors relating to the best interests of the child?

3. Did the trial court abuse its discretion by not ordering a custody investigation?

4. Did the trial court abuse its discretion in failing to order the production of respondent's mental health records?

## ANALYSIS

### 1.

Gilbert Peppin contends that at no time prior to Rose Marie Morey's initial motion and Peppin's countermotion had the custody of Chad Morey been adjudicated. Peppin argues that since there had been no prior adjudication of custody, the trial court should have ordered a hearing with the right of both parties to present and cross-examine witnesses upon whose testimony the court was to base its findings.

Respondent Rose Marie Morey claims that there is a prior custody order finding custody to be in Morey.[1] The basis of her argument is an order of the trial court providing for the payment of child support by Peppin. She contends that this is an implicit finding that Chad was in Morey's custody.[2] As she asserts, change of custody can be denied without a hearing when a prima facie case for change is not shown in affidavits, *Nice-Petersen v. Nice-Petersen*, 310 N.W.2d 471 (Minn.1981), and Minn.Stat. § 518.18 (1982) establishes a narrow standard for modification.[3]

We agree with appellant that there has been no prior adjudication of Chad Morey's custody and hold that as a matter of law, under the facts of this case, Gilbert Peppin has a right to an evidentiary hearing on the question of the award of custody that serves the best interests of the child. Minn.Stat. § 518.17 (1982).

Minn.Stat. § 257.541(2)(a) (Supp.1983) provides in relevant part:

If paternity has been acknowledged under section 257.34 and paternity has been established under sections 257.51 to 257.-74, the father's rights of visitation or custody are determined under sections 518.17 and 518.175.

Here, appellant acknowledged that he was the biological father of Chad Morey in a written signed affidavit by both of the parties before a notary public as required by Minn.Stat. § 257.34 (Supp.1983). His parentage was adjudicated in December, 1980. Therefore, the custody question raised by the father Gilbert Peppin must be decided under § 518.17 pursuant to Minn. Stat. § 257.541(2)(a) (Supp.1983).

To say otherwise would be to deny the father fundamental rights guaranteed by the parentage act and by the federal constitution. *See Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

This is not to suggest that the mother's rights are more limited than those of a mother whose child is born in wedlock. Minn.Stat. § 518.17(3) (1982) requires that a grant of custody be based on the best interests of the child. Factors to be considered in determining the best interests of the child include "[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." Minn.Stat. § 518.17(1)(e) (1982). See, *Weatherly v. Weatherly*, 330 N.W.2d 890 (Minn.1983). Thus, respondent is entitled to have the continuity of care she has provided Chad and the desirability of maintaining that continuity considered in this matter, but she is not entitled to the protection of Minn.Stat. § 518.18 (1982) limiting change of custody, or to the procedur-

---

1. Respondent maintains, alternatively, that her rights should be the same as those of a parent previously awarded custody, because an unmarried mother has "sole custody" of a child until paternity is established. Minn.Stat. § 257.-541(1) (Supp.1983). We do not agree with this claim. The custody declared by statute is expressly in reference to the period before parentage is determined. Further, statutes and cases limiting the change of custody awards are shaped in great part by a preference for final judicial decisions. *See Auge v. Auge*, 334 N.W.2d 393, 399 (Minn.1983).

2. On January 12, 1981, appellant signed a stipulation that resulted in an order for payment of child support, but there was never a custodial order issued.

3. Respondent also cites the Minnesota Supreme Court decision that equates the non-custodian's opposition to a move of the child's residence to a request for change of custody. *Auge.* That holding, important as it is when a custodial parent wishes to move, does not deal with the rights of either parent when a move is proposed before an award of custody occurs.

al advantages declared in *Nice-Petersen* and *Auge, Id.*

Under relevant statutes and the constitutional demand for due process, Gilbert Peppin is entitled to an evidentiary hearing before the trial court awards custody of Chad Morey.

### 2.

■ In its order for judgment the trial court made no findings of fact to support its award of custody. Likewise, no findings were stated to support denial of respondent's motion for the right to move the child's residence to Colorado. Determination of custody without findings is reversible error. *Rosenfeld v. Rosenfeld,* 311 Minn. 76, 249 N.W.2d 168 (1976). In the *Rosenfeld* case the Minnesota Supreme Court declared the importance of findings for the parties and for appeal purposes, and the effectiveness of the practice in assuring that the trial court complies with the statutory demand to consider the best interests of the child and the factors specified in Minn.Stat. § 518.17 (1982). Upon remand appropriate findings must show the trial court's view of evidence offered at a hearing.

### 3.

■ It is within the discretion of the trial court to order a child custody investigation and report. When the court is asked to make that order, it "may" do so. Minn. Stat. § 518.167(1) (1982). Appellant asserts the seriousness of his allegations on the custody issue support his claim that the trial court abused its discretion in proceeding without a social investigation. We find nothing in the circumstances of this case to justify interference with the trial court's election whether to utilize an investigation and report.

### 4.

Appellant contends he is entitled to disclosure of respondent's mental health records because a party waives medical privileges when placing her health in controversy. Rule 35.03, Minn.R.Civ.P. It is true that the mental health of the parent is at issue in a child custody dispute. Minn. Stat. § 518.17(1)(g) (1982).

While Rule 35 provides an orderly handling of disclosure of records on personal injuries, its meaning and purpose are strained when a parent is required to permit an unlimited search of records related to past mental health therapy.

■ Upon remand the trial court should examine records demanded according to the rule and use its protective authority to prevent disclosures that are irrelevant to the custody question or otherwise annoying, embarrassing, oppressive, or unduly burdensome. Rule 26.03, Minn.R.Civ.P.

### 5.

■ Due to the relative financial circumstances of the parties, appellant is required to pay $400 for respondent's attorney fees on this appeal, together with her costs in the appeal proceedings.[4]

### DECISION

An evidentiary hearing must be conducted on appellant's motion for an award of custody of a child born outside of marriage. The trial court's determination of child custody must be based on appropriate findings of fact. The trial court may elect whether to utilize a social investigation and report. The trial court should permit but carefully control pre-hearing disclosure of mental health records.

We affirm the trial court's prior election against use of a social investigation, but we remand the case for a hearing conducted

---

**4.** The requirement to pay attorney fees and costs in dissolution cases is governed by Minn. Stat. § 518.14 (1982). Under Minn.Stat. § 257.-66(3) (Supp.1983), numerous issues in parentage cases should be determined in accordance with ch. 518. Normally, in proceedings under ch. 257, counsel is appointed for a party who is unable to pay for legal services. Minn.Stat. § 257.69(1) (1982). In a custody dispute resolved under Minn.Stat. § 518.17, ch. 257 does not preclude involvement of retained counsel and awards for payment of fees of a retained attorney under Minn.Stat. § 518.14.

according to the rules of law announced here.

Affirmed in part and remanded for an evidentiary hearing.