**Rose Marie MOREY,**
**Petitioner, Appellant,**

v.

**Gilbert PEPPIN, Respondent.**

**No. C1–83–1835.**

Supreme Court of Minnesota.

Oct. 11, 1985.

Joanne Thatcher Swanson, St. Paul, for appellant.

C.J. Knippel, Minneapolis, for respondent.

Martha A. Eaves and Ellen Gavin, St. Paul, for Southern Minn. Regional Legal Services, Inc.

COYNE, Justice.

We have granted further review in this matter for determination of the proper statutory criteria to be applied in a post-paternity-adjudication custody dispute between parents of a child born out of wedlock. The court of appeals held that the adjudicated father had a constitutional right to have custody determined in an evidentiary hearing in which the criteria set ·out at Minn.Stat. § 518.17 (1984) would be applied. *Morey v. Peppin*, 353 N.W.2d 179 (Minn.App.1984). Morey, the child's mother, contends, however, that a proceeding for custody initiated more than two and one-half years after an adjudication of paternity and order requiring the adjudicated father to pay monthly child support is equivalent to a motion for change or modification of custody governed by the provisions of Minn.Stat. § 518.18 (1984). We

agree that the statutory criteria for a change of custody should apply in this case and we reverse and reinstate the judgment of the trial court.

Chad Morey was born on January 25, 1980, to Rose Marie Morey, an unmarried woman. Gilbert Peppin apparently acknowledged that he is Chad's natural father.[1] Although Peppin regularly exercised visitation of the child, one night each week and every other weekend, Chad has lived with his mother since his birth.

At the behest of the office of the Dakota County Attorney, Morey, a recipient of financial assistance from Dakota County through the Aid to Families with Dependent Children (AFDC), instituted paternity proceedings. The summons and complaint notified Peppin that the proceeding was to have him adjudged Chad's father and to secure "such relief as is provided for in Section 257.257, Minnesota Statutes, 1971, as amended." Peppin's appearance was by affidavit in which he admitted that he is Chad's father, consented to entry of judgment adjudicating paternity, and waived further notice of the proceedings.

On December 9, 1980 the court issued an order adjudging Peppin to be Chad's father and subject to the obligations of a father toward his legitimate children and directing Peppin to appear before the court on January 13, 1981, unless within 30 days he and the county department of human services had come to an agreement regarding the payment of child support. It was not until the county attorney had commenced a separate action for support that Peppin acknowledged his duty to support Chad and agreed to pay child support of $150 per month to Dakota County Support and Collections. In the stipulation Peppin also waived his right to a hearing on the matter. On January 15, 1981, the court issued a support order based on the stipulation.

Two and one-half years later, in August of 1983, Morey sought an order permitting her and the child to relocate in Colorado, where she claimed to have been promised employment. Peppin responded by moving for a change of custody. Subsequently, Peppin brought a supplemental motion for an order finding that there was no existing custody order. By order of October 18, 1983, the court ordered that Morey should have sole legal and physical custody of Chad subject to reasonable visitation by Peppin, but denying Morey's request to remove the child from Minnesota.

Holding that Peppin has a constitutional right to an evidentiary hearing and that Minn.Stat. § 257.541(2)(a) (1984) requires that the custody question be determined under section 518.17, the court of appeals remanded the matter for an evidentiary hearing for an award of custody pursuant to section 518.17.

The common law imposed on a putative father no duty to support his illegitimate child; neither did it afford the father any custodial or other right with respect to the child. *State v. Lindskog,* 175 Minn. 533, 221 N.W. 911 (1928); *State v. Nestaval,* 72 Minn. 415, 75 N.W. 725 (1898). The child's mother, as "guardian by nurture," had the sole right to the custody and control of her child born out of wedlock; the mother also had the sole obligation to support the child. *Nestaval,* 72 Minn. at 416, 75 N.W. at 725. As early as 1894, Minnesota imposed a statutory duty of support on the father of a child born out of wedlock, *id.,* but the natural mother's sole right to custody of

---

1. The court of appeals declared that Peppin "acknowledged that he was the biological father of Chad Morey in a written signed affidavit by both of the parties before a notary public as required by Minn.Stat. § 257.34 (Supp.1983)." *Morey v. Peppin,* 353 N.W.2d 179, 182 (Minn. App.1984). The record does not include such a document. Although Morey does not deny that Peppin acknowledged paternity shortly after Chad's birth or suggest that he ever denied that he was Chad's father, the record does not dis-close whether the acknowledgement was oral or written or, if written, whether or not it comports with the requirements of section 257.34, subd. 1:

> The mother and father of a child born to a mother who was not married to the child's father when the child was conceived nor when the child was born may, in a writing signed by both of them before a notary public, declare and acknowledge under oath that they are the biological parents of the child.

such a child continued to be recognized into the 1960's. *See* Minn.Stat. § 259.24, subd. 1(a) (1961) (illegitimate child could be adopted without father's consent); *In re Shady*, 264 Minn. 222, 118 N.W.2d 449 (1962) (father of child born out of wedlock does not have same rights of custody as father whose child is born of a lawful marriage).

Today statutes have superseded the common law in most aspects of family law. The Minnesota Parentage Act, derived from the Uniform Parentage Act and adopted in 1980, *see* Act of April 23, 1980, ch. 589, § 1–24, 1980 Minn.Laws 1070, 1071–79, governs the establishment of the parent and child relationship between a child and its natural father. Minn.Stat. § 257.54 (1984). The Act declares who may bring an action for the determination of the father and child relationship, Minn.Stat. § 257.57 (1984), and it prescribes the contents of a judgment or order determining the existence or nonexistence of the parent-child relationship:

> The judgment or order shall contain provisions concerning the duty of support, the custody of the child, the name of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child.

Minn.Stat. § 257.66, subd. 3 (1984).

As originally enacted in 1980, section 257.66 went on to provide that "[t]hese matters and all subsequent motions related to them shall proceed and be determined in accordance with chapter 518"—a provision which seems in keeping with the declared purpose of the uniform act to provide substantive equality among children regardless of the marital status of their parents. Uniform Parentage Act, 9A U.L.A. 579, commentary at 580 (1979). Subsequently, by the enactment of Act of June 9, 1983, ch. 308, § 3, 1983 Minn. Laws 1748, 1751, effective June 10, 1983, the legislature incorporated into the Parentage Act more specific provisions regarding custody and

visitation of children born outside of marriage:

> Subdivision 1. **Mother's right to custody.** The natural mother of a child born to a mother who was not married to the child's father neither when the child was born nor when the child was conceived has sole custody of the child until paternity has been established.
>
> Subd. 2. **Father's right to visitation.**
>
> (a) If paternity has been acknowledged under section 257.34 and paternity has been established under sections 257.51 to 257.74, the father's rights of visitation or custody are determined under sections 518.17 and 518.175.
>
> (b) If paternity has not been acknowledged under section 257.34 and paternity has been established under sections 257.51 to 257.74, the natural father may petition for rights of visitation or custody in a separate proceeding under section 518.156.

Minn.Stat. § 257.541 (1984). At the same time section 257.66 was amended to provide that "[c]ustody and visitation and all subsequent motions related to them shall proceed and be determined under section [257.-541]. The remaining matters and all subsequent motions related to them shall proceed and be determined in accordance with chapter 518." Act of June 9, 1983, ch. 308, § 11, 1983 Minn.Laws 1748, 1755.

At the outset it should be observed that the statutory scheme contemplates that at all times a custodian shall, as a matter of legal right, have custody of a child born outside of marriage. From the moment of birth until paternity has been established pursuant to the Parentage Act, the natural mother has sole custody. Minn.Stat. § 257.541, subd. 1 (1984). Minn.Stat. § 257.66, subd. 3 (1984), unlike the corresponding section of the Uniform Parentage Act,[2] mandates that a judgment or order establishing paternity shall contain provisions for custody of and visitation with the child, as well as provision for the child's support.

---

2. Unif. Parentage Act § 15(c), 9A U.L.A. 607 (1979).

Apart from the requirement for continuous custody, the Parentage Act is instructive in another respect: the Act preserves the common law right to custody in the mother and absence of any legal right to custody in the putative father pending the establishment of paternity. Minn.Stat. § 257.541, subd. 1 (1984). A fortiori, whatever custodial right the father may have cannot arise until paternity has been established pursuant to the Act. Subdivision 2 of section 257.541 lays down the manner in which the father may assert a claim for custody. If there has been a declaration of parentage pursuant to section 257.34 and an adjudication of paternity pursuant to the Parentage Act, then custody and the noncustodial parents' rights of visitation are to be determined under section 518.17, which sets out the criteria governing an initial custody determination, and section 518.175, which sets out the criteria for granting visitation. If, on the other hand, there has been no declaration of parentage but only an adjudication of paternity, the father must commence a separate proceeding for custody or visitation pursuant to section 518.156.

The thrust of these two clauses is quite different. Section 518.17 declares the substantive law applicable to a custody determination in pending proceedings. Section 518.156 sets out the procedure for the commencement of custody proceedings. It does not set out any criteria to be considered in awarding custody, nor does it contain any reference to visitation rights. We do not, however, perceive in these variant provisions a legislative intention to discriminate among unmarried fathers on the basis of a declaration of parentage. Rather the statutory differences reflect the practical differences in paternity proceedings.

An acknowledgement of paternity qualifies as a section 257.34 declaration of parentage only if both natural parents declare and acknowledge under oath and in writing signed before a notary public that they are the biological parents of a child born outside of marriage. That the child's mother, as well as the natural father, must join in the declaration suggests the possibility that qualifying declarations are often executed by natural parents who, though unmarried, are living together with the child as a family unit. Whether it is the breakup of that family unit or some other circumstance which precipitates the action for the determination of paternity,[3] it is apparent that the proceeding, to the extent of the adjudication of paternity, is not an adversary proceeding.[4] That portion of the proceeding directed to custody and visitation privileges may, indeed, be adversarial, but whether or not the parents are at odds about custody, section 257.541 directs the court to base the custody order on the "best interests of the child," including consideration of those factors set out at section 518.17. Thus, the statute declares that the legislative recognition in subdivision 1 that the natural mother has sole custody of the child until paternity has been established is not tantamount to a judicial custody determination and that the custody order which must be entered in the paternity action is deemed to be an original custody order, not an order for change or modification.

Absent a declaration of parentage, the paternity action—at least at the outset—is an adversary proceeding. Since it would be anomalous for the defendant to seek custody while denying paternity, the father must initiate a separate proceeding for custody or visitation pursuant to section 518.156. The nature of the proceeding depends on its timing. If the custody proceeding is concurrent with or consolidated with the paternity action so that the matter under consideration is the original determi-

3. The alleged or presumed father, as well as the child, the natural mother or the public authority chargeable with support of the child may institute an action for determination of the existence or nonexistence of the father and child relationship. Minn.Stat. § 257.57 (1984).

4. The declaration of parentage has the same consequences as the father's acknowledgement of paternity for purposes of the paternity action. Minn.Stat. § 257.34 (1984).

nation of custody, the award must be made pursuant to section 518.17. Minn.Stat. § 518.17, subd. 3 (1984). But if the custody proceeding is commenced after the conclusion of the paternity action, the petition really seeks a change or modification of the custody order entered in the paternity action and, hence, is governed by section 518.-18(d).

■ Peppin contends that since neither the order determining paternity nor the order directing Peppin to make monthly support payments awards custody of the child to Morey, his request for custody—even though made more than two and one-half years after adjudication—seeks an original custody determination to be made pursuant to section 518.17. We are not persuaded that in this case the law, which contemplates that a child shall have a custodian at all times during minority, will countenance a two and one-half year hiatus in custody. In fact the child has lived his entire life in his mother's custody and subject to her control. The mother's custody and the father's visitation were accomplished by common agreement. Not so the father's support of the child—which was forthcoming only after institution of an action for support. Implicit in the stipulation in that proceeding and the order directing payment to the Dakota County Support and Collections unit is recognition that Morey had custody of the child. In the face of the father's apparent disinterest, there can be no doubt that had the issue been specifically addressed in the paternity proceeding—as it should have been—custody would have been awarded to Morey.[5] Under these circumstances the order in the earlier proceeding will be deemed to have been issued in compliance with section 257.-66 and to have recognized Morey as the child's custodian with the same effect as if explicitly stated therein.

Peppin contends that he has a due process right to an evidentiary hearing in which custody is determined pursuant to section 518.17. Citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the court of appeals agreed. 353 N.W.2d at 182. In *Stanley* the Supreme Court declared unconstitutional an Illinois statutory system under which children were, upon their mother's death, declared dependents and separated from their biological but unwed father without a hearing on parental fitness and without proof of neglect. The presumption that unwed fathers are unfit and neglectful parents violated the due process clause of the Fourteenth Amendment. Moreover, since married fathers—whether divorced, widowed or separated—and mothers—even if unwed—were not similarly burdened, the presumption violated the equal protection clause as well. 405 U.S. at 658, 92 S.Ct. at 1216.

■ Here it is undisputed that Peppin had notice of the paternity action, in which custody as well as paternity is necessarily determined. Indeed, Peppin participated in the action to the extent he wished. That the judgment in that action is deemed to provide for continued custody in Morey is not the result of the operation of a presumption of Peppin's unfitness but, rather, recognition that the child remained in the same environment in which he had lived since birth—with his mother, his primary caretaker. Peppin was not discriminated against as an unwed father; he simply did not present his case for custody. Although actions for determination of the existence or nonexistence of the parent-child relationship commonly involve unmarried parties, unwed fathers bear no additional burdens in the custody determination which is a part of such actions.

Peppin's reliance on *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) is similarly misplaced. In *Caban* the Supreme Court held that a New York statute which granted an unwed mother an absolute veto power over the adoption of her child but gave the unwed

---

**5.** We trust that the county attorney's failure to request a custody order in this case is an isolated occurrence which will not be repeated.

father no voice in the matter violated the equal protection clause. Here neither the unwed mother nor the unwed father were granted any special power. Mother and father had equal opportunity to present a claim for custody at the time of the paternity action, and the continuation of custody in Morey was not the product of any unconstitutional procedural advantage.[6]

■ Unlike *Stanley* and *Caban*, the critical issue here is one of custody, requiring a balancing of the rights not only of the adjudicated father, but the natural mother and the child as well. The Parentage Act meets due process requirements by affording the parents of a child born outside of marriage the right to assert a claim for custody on the same basis as is afforded married parents. Competing claims for custody are resolved by holding an evidentiary hearing and determining custody according to the criteria set out in section 518.17 if the claims are asserted at the time of the marital dissolution or the adjudication of paternity.[7] Thereafter, the noncustodial parent, whether or not formerly married, must petition for a change of custody to be determined according to the criteria set out at section 518.18. *State on Behalf of Gunderson v. Preuss*, 336 N.W.2d 546 (Minn.1983). An evidentiary hearing is required on a motion for change or modification of an award of child custody only if the noncustodial parent makes adequate preliminary showing of a change of circumstances. *Nice-Petersen v. Nice-Petersen*, 310 N.W.2d 471 (Minn.1981). Due process does not require more.

The best interests of the child are, of course, always paramount. We have previously recognized that one of the few guidelines the court has to follow in determining the best interests of a child is that continui-

ty and stability in relationships are important for the child. *Auge v. Auge*, 334 N.W.2d 393, 399 (Minn.1983). In any future motion for modification of the award of child custody in this matter an evidentiary hearing shall be scheduled if, by affidavits submitted in support of the motion, Minn.Stat. § 518.185 (1984), the movant makes a prima facie showing of circumstances justifying modification pursuant to the provisions of Minn.Stat. § 518.18 (1984).

We reverse and reinstate the order of the trial court.

**6.** *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) and *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) also indicate that the role that the unwed father has played and the relationship between father and child affects the due process rights at stake. The greater, more traditional the role, the more protection afforded the rights. *See also Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *Quilloin v. Wal-*

*cott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978).

**7.** We are not aware of any decision which accords an unmarried father the right, at whatever time he chooses to assert it, to an evidentiary hearing in which custody is determined according to the standards applied in original custody decisions.