**Lorraine OZENNA, Appellant,**

v.

**Michael PARMELEE, Respondent.**

**No. C6–85–832.**

Court of Appeals of Minnesota.

Nov. 26, 1985.

Paul W. Onkka, Jr., Southern Minn. Regional Legal Services, Inc., Carver, for appellant.

Gary M. Peterson, Keating & Peterson, Faribault, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Lorraine Ozenna appeals from an order granting Michael Parmelee physical and legal custody of their three minor children and granting her minimal support. Respondent admits paternity of the three children born out-of-wedlock to the parties and challenges appellant's suit for her full custody of the children. Appellant argues the trial court erred in applying statutory criteria applicable only to dissolution actions and abused its discretion by awarding custody to the father. Appellant also argues the court award of $100 per month as child support is insufficient where her "visitation rights" require her to care for the children

four days out of seven. We reverse and remand.

## FACTS

This case is an unusual custody dispute involving the three minor children of two parties who lived together as a traditional family despite never being married. Appellant is an Inupiaq Eskimo born in Alaska. She met respondent in Nome, Alaska in 1976, when she rented property from him while attending school there. Respondent managed and maintained his rental property in the Nome area. He originally moved from Minnesota to Alaska in 1965 to teach school.

The parties began living together in May 1977. They had three daughters together, all born in Nome, Alaska. Their respective birth dates are December 26, 1977, March 11, 1980 and March 21, 1982. Appellant testified she assumed the primary care of the children. She occasionally worked outside the home, beginning a full-time job in 1982 and then returning to school in the fall of 1982. For two months of this period, her mother moved in with the parties and cared for the children. Respondent testified he shared in caring for the children. He indicated that his work as a landlord allowed him to spend most winter days at home with the family.

The parties decided to move to respondent's home town of Faribault, Minnesota in 1982. After respondent made arrangements and purchased a home, appellant decided to stay in Nome to attend school. She agreed that the three children could go to Faribault with their father. Respondent obtained the order of an Alaskan District Court acknowledging his paternity and granting him temporary physical and legal custody of the children pursuant to the parties' stipulation. In November 1982, respondent and the children moved to Faribault and he assumed all care for the children. Appellant visited them for one or

two weeks at Christmas and then returned to Alaska.

In mid-February 1983, appellant quit school and moved to Faribault because she missed the children. In May 1983, she moved in with respondent and the children and again cared for them on a full-time basis. From June to October respondent went to Alaska on business while appellant remained in Faribault with the children. Upon his return, the parties shared in the care of the children pursuant to a temporary court order of joint custody.

The State of Minnesota commenced this action on appellant's behalf in October 1983, seeking to determine formal parentage of the children and establish appellant's right to custody and support. Respondent admitted paternity in his answer, noting both the acknowledgement of paternity in the stipulation and the order entered into in November and December 1982 in the Superior Court, Second Judicial District of the State of Alaska. He requested permanent custody. On November 29, 1983 the Minnesota court appointed a guardian ad litem for the children and ordered temporary joint custody pending a final determination.

In August 1984, with the advice of counsel, the parties stipulated to joint custody of the children. Appellant had the children from 5 p.m. Sunday to 5 p.m. Thursday, while respondent had the children the rest of the time. Vacation times were split equally.

Appellant became dissatisfied with this proposal. She discharged her attorney, withdrew from the stipulation and requested that the matter of custody be reopened. While this matter was pending, the children split their time between the parents under the court's temporary order which incorporated the parties' proposal for joint custody.

On January 8 and 9, 1985, the custody issue was tried. Appellant represented herself, indicating she could not afford counsel.[1] Respondent was represented by

---

**1.** Neither party argued the applicability of Minn.Stat. § 257.69, subd. 1 (1984) to these pro-

ceedings. However, we note that appellant is now represented by counsel and we presume

counsel. The social worker who prepared the 1984 custody report testified that she had no contact with the parties in the past one and one-half years and was unable to make a current recommendation as to custody. The guardian ad litem recommended that the father be given sole physical custody because she believed that the father was more supportive of the children's relationship with the other parent. She recommended a liberal visitation plan, allowing the children to spend approximately one-half their time with their mother. Appellant's counselor, the social worker and the guardian ad litem each indicated a concern over appellant's use of alcohol. Appellant testified that she had consumed alcohol on only three occasions in the last two years (when respondent had the children), and had twice become intoxicated. She explained that she was lonely and would never drink in front of the children.

Appellant explained why she did not want to agree to joint custody: "My case is [that] sole physical and legal custody should be given to one parent so that way the children can have one home where they can call a home instead of being shuffled back and forth. I think in time it will take it's toll on the children, and if given custody to me, I will take them back to the State of Alaska because that is where I am from, that is where they should be raised in a cultural background where most of the— my relatives are." She further indicated: "[M]y identity with them is so strong that I think they would be better off living with their mother, and no one has come out that said that there is great danger with the children living with me, and if there was, then custody would have been taken away, there wouldn't be any joint physical custody at this time, so I see no reason why the children cannot have one place, one home."

At the time of trial, respondent was working about 15 hours per week as a janitor at his church, while a manager handled his Alaskan rental property. Appellant was working about 15 hours per week at the time of the hearing, having cut her hours back from 30 per week to spend more time with the children and deal with the custody dispute.

The court entered its order on February 4, 1985, granting the father legal and physical custody of the three minor children and granting the mother liberal visitation (four days per week) if she remained in Faribault. If the mother moved back to Alaska, her visitation would be limited to eight weeks of summer vacation and one week of winter vacation, unless the father also moved back to Alaska or visited there with the children.

Appellant moved for a new trial. The court denied this motion but amended its order to provide her with $100 per month support to pay for food and miscellaneous expenses related to visitation with the children. She appeals from the order of the court granting respondent custody and from the amended order of support.

## ISSUES

1. Did the trial court have the authority to consider the father's rights to custody and visitation at the paternity proceeding?

2. Did the trial court apply the wrong statutory criteria in determining who should be awarded the custody of the children?

3. Did the trial court err in ordering a *de facto* joint custody arrangement?

4. Did the trial court abuse its discretion in awarding the father custody?

5. Did the trial court err in awarding appellant nominal support?

1. *Separate proceedings?*

Appellant asserts that Minn.Stat. § 257.-541, subd. 2(b) requires respondent to initiate a separate proceeding to obtain custody or visitation of the children. We disagree.

Minn.Stat. § 257.541, subd. 2 (1984) states:

Subd. 2 **Father's right to visitation.** (a) If paternity has been acknowledged under section 257.34 and paternity has

that she will continue to be represented by counsel at the re-hearing of this matter.

been established under sections 257.51 to 257.74, the father's rights of visitation or custody are determined under sections 518.17 and 518.175.

(b) If paternity has not been acknowledged under section 257.34 and paternity has been established under sections 257.-51 to 257.74, the natural father may petition for rights of visitation or custody in a separate proceeding under section 518.-156.

Subdivision 2(a) applies here because paternity has been acknowledged. Both parties entered into a notarized agreement filed in an Alaskan district court acknowledging that respondent was the father and appellant was the mother of the three children. This document qualifies as an acknowledgement of paternity under Minn.Stat. § 257.34 (1984). We also note that respondent has always held himself out as the father of the three children, his name is on their birth certificates, and an Alaskan court order granted respondent temporary custody of the three children, as their father, before he brought them to Faribault, Minnesota.

■ The Minnesota Supreme Court recently noted in *Morey v. Peppin,* 375 N.W.2d 19 (Minn.1985), that a custody proceeding may be concurrent with or consolidated with the paternity action. *Id.* at 23. Here there was no need for one hearing to determine paternity and a subsequent hearing to consider the father's right to custody because the father admits paternity and seeks joint custody. Minn.Stat. § 257.66, subd. 3 (1984) states:

> The judgment or order shall contain provisions concerning the duty of support, the custody of the child, the name of the child, visitation privileges with the child, * * * or any other matter in the best interest of the child. * * *.

Applying *Morey* and Minn.Stat. § 257.66, subd. 3, we hold that the trial court properly considered the father's right to custody and to visitation in its judgment of paternity.

2. *Which Factors?*

Appellant correctly notes that the trial court should consider the "best interests of the child," and those factors found in Minn. Stat. §§ 518.17 and 518.175 (1984) when determining the rights of the parents to custody and visitation in the context of a paternity proceeding. *See* Minn.Stat. § 257.541, subd. 2(a).

■ The trial court stated that it considered the factors found in Minn.Stat. §§ 257.025 and 518.17. The factors in these statutes are nearly identical and are all relevant to the "best interests of the child." In *Morey,* the Minnesota Supreme Court held that where a father has acknowledged paternity, *see* Minn.Stat. § 257.34, and seeks custody at the paternity proceeding "so that the matter under consideration is the original determination of custody, the award must be made pursuant to section 518.17." *Morey,* 375 N.W.2d at 21. The appropriate factors are therefore those listed in Minn.Stat. § 518.17.

■ 3. *De Facto Joint Custody:*

Joint physical custody includes any plan where "the routine daily care and control and the residence" of the children "is structured between the parties." Minn.Stat. § 518.003, subd. 3(d) (1984). Appellant was awarded four days of visitation per week, while respondent, as the custodial parent, was awarded three days per week. We agree with appellant that the arrangement here is a *de facto* award of joint custody.

> When joint custody is contemplated additional factors specified in Minn.Stat. § 518.17(2) (1982) must be considered. These factors deal with the ability of the parents to relate cooperatively in parenting decisions and bear mostly on the award of joint legal custody; joint legal custody is defined as the equal participation of parents in decisions on the upbringing of a child. Minn.Stat. § 518.-003(3)(b) (1982).

*Heard v. Heard,* 353 N.W.2d 157, 161 (Minn.Ct.App.1984). The trial court failed to make findings relative to the factors found in Minn.Stat. § 518.17, subd. 2.

The appellant argues that liberal visitation is not appropriate here. At trial, she and the paternal grandmother both testified that the temporary joint custody arrangement, where the children rotate twice a week between the homes of their parents, would take its toll on the children and was not in their best interests. Appellant testified that she noticed the children did not call any place, "their home." They referred to each parent's home as "dad's home" or "mom's home" but not "my home." The court did not address these concerns in its findings.

A liberal visitation arrangement may serve the best interests of the children. *See Halper v. Halper*, 348 N.W.2d 360 (Minn.Ct.App.1984). The arrangement here, however, appears to skirt the issue before the court—the very difficult selection of the custodial parent. If a liberal visitation policy is truly in the best interests of the children, and is not an evasion by the court of its duty, the findings should reflect this fact.

### 4. *Custody Award:*

The standard of review in a custody determination is stated as follows:

Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law.

*Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985).

Here, the trial court reviewed the factors in Minn.Stat. § 518.17 and found:

That both parties are fit and proper persons to have the legal and physical custody of said minor children. That based on the factors set forth in Minn.Stat. §§ 257.025 and 518.17, it is in the best interests and welfare of said minor children that they be in the legal and physical custody of defendant [Parmelee].

The appellant was granted liberal visitation rights (provided she remained in the same community), of four days per week and one-half of the children's vacation times, as agreed by the parties. If appellant left Faribault (to return to Alaska), her visitation rights included eight weeks of summer vacation and one week of winter vacation and reasonable visitation at times the respondent and children visited her community.

Appellant claims that the court misapplied the factors, emphasized appellant's faults, placed undue emphasis on her proposed return to Nome, Alaska and reached the wrong result by not awarding her sole custody.

The trial court was legitimately interested in protecting visitation with both parents. *See Auge v. Auge*, 334 N.W.2d 393 (Minn.1983). However, the award of custody to the father with liberal visitation rights given to the mother seems to have the effect of requiring the mother to stay in Faribault where she has been lonely and without her family and cultural ties. Respondent indicated he would probably return to Alaska if appellant was awarded custody. Therefore, the father's visitation rights would not necessarily be sacrificed if the mother were granted custody.

Appellant also argues that the trial court abused its discretion in awarding the respondent custody since she was the children's primary caretaker. Appellant may be correct. The recent Minnesota Supreme Court case, *Pikula v. Pikula*, 374 N.W.2d 705 (Minn.1985), indicates that the best interests of the children are usually served by awarding custody to the primary caretaker. In *Pikula*, the Minnesota Supreme Court adopts a clear rule for cases like this:

For these reasons—the recognized need for stability in children's lives, the uncertainty of other indicia of a child's best interests in custody decisions, and the pressing need for coherent decisionmaking on the trial court level and for effective appellate review—*we hold the factors set forth in section 518.17, subd. 1, require that when both parents seek custody of a child too young to express a preference for a particular parent and one parent has been the primary caretaker, custody be awarded to the primary parent absent a showing that*

*that parent is unfit to be the custodian.* We adopt the indicia of primary parenthood set forth in *Garska* to aid trial courts in determining which, if either, parent is the primary caretaker:

> While it is difficult to enumerate all of the factors which will contribute to a conclusion that one or the other parent was the primary caretaker parent, nonetheless, there are certain obvious criteria to which a court must initially look. In establishing which natural or adoptive parent is the primary caretaker, the trial court shall determine which parent has taken primary responsbility for, *inter alia,* the performance of the following caring and nurturing duties of a parent: (1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning, and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e. babysitting, day-care, etc.; (7) putting child to bed at night, attending child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e. religious, cultural, social, etc.; and, (10) teaching elementary skills, i.e., reading, writing and arithmetic.

*Garska,* 278 S.E.2d at 363. When the facts demonstrate that responsibility for and performance of child care was shared by both parents in an entirely equal way, then no preference arises and the court must limit its inquiry to other indicia of parental fitness. Once the preference does arise, however, the primary parent should be given custody unless it is shown that the child's physical or emotional health is likely to be endangered or impaired by being placed in the primary parent's custody.

The indicia of primary parenthood set forth above make plain that a parent who has performed the traditional role of homemaker will ordinarily be able to establish primary parent status in a custody proceeding involving young children. That this is so reflects no judgment by this court on the competence or fitness of parents who choose or are compelled to fashion less traditional divisions of labor within a family. Our decision today merely encompasses our understanding of the traumatic impact on children of separation from the primary caretaker parent. Nor do we mean to suggest that a parent who works outside the home may not be deemed the primary parent. We would expect, that as between two parents, one will be the primary parent even if neither conforms to the more traditional pattern of one parent working outside the home and one within it * * *.

*Id.* at 713 (emphasis added) (citations omitted).

This case must be remanded for further proceedings in accord with *Pikula.* The trial court should make findings as to who was the primary caretaker of the children before these proceedings were initiated, applying the principles and factors enunciated in *Pikula.* The trial court should award custody to the parent who was the primary caretaker, "unless it is shown that the child's physical or emotional health is likely to be endangered or impaired by being placed in the primary parent's custody." *Id.* at 713. Should the trial court find "that responsibility for and performance of child care was shared by both parents in an entirely equal way, then no preference arises and the court must limit its inquiry to other indicia of parental fitness." *Id.* at 714.

### 5. *Support:*

■ Appellant challenges the sufficiency of the trial court's award of $100 per month in child support. Appellant received $500 per month to provide for the children's needs when she cared for them four days out of seven under the court's temporary order of joint custody. Now she only receives $100 per month for a continuation of this arrangement with the distinction

that the father is now the "custodial parent." Apparently, the court believed that the father will incur all the expenses of raising the girls as their custodial parent. The court order indicated that the mother's obligation is to feed the children meals when with her. The award is not supported by findings given the relative income of the parties and the expenses of maintaining two households for the girls. *See* Minn.Stat. § 518.17, subd. 4 & 5 (1984).

Since we remand this case to the trial court for reconsideration of the custody award, the trial court should reconsider an appropriate award of support based on its specific findings.

## DECISION

1. The trial court properly considered the parties' rights to custody and visitation during the paternity proceedings.

2. The appropriate criteria for determining custody and visitation rights are those found in Minn.Stat. § 518.17 and § 518.175.

3. Joint custody may not be ordered absent specific consideration of Minn.Stat. § 518.17, subd. 2, as well as the finding that this arrangement is in the best interests of the children.

4. The trial court award of custody and visitation rights must be reconsidered in light of the rule set out in *Pikula*.

5. Following an award of custody, the trial court should order an appropriate level of support based on specific findings directed by Minn.Stat. § 518.17, subd. 4 & 5.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.