**Emily PSYCK, Respondent,**

v.

**Joseph WOJTYSIAK, Appellant.**

**No. C6-86-1683.**

Court of Appeals of Minnesota.

Feb. 10, 1987.

Review Denied April 17, 1987.

Leonard A. Wilson, Jr., Cloquet, for respondent.

Elizabeth A. Storaasli, Bye, Boyd, Andresen & Sullivan, Duluth, for appellant.

Considered and decided by WOZNIAK, P.J., and LESLIE and RANDALL, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Joseph Wojtysiak appeals from an order denying his motion to modify custody of his twelve year old son Rodney. The trial court applied the standards of Minn.Stat. § 518.18 because Wojtysiak was moving for a modification of custody. On appeal Wojtysiak claims the trial court used an incorrect standard and the evidence is insufficient to support the decision. We reverse.

## FACTS

Rodney Psyck was born on August 27, 1974 to Joseph Wojtysiak and Emily Psyck, who were unmarried. Wojtysiak voluntarily admitted paternity of the child in a judicial proceeding on December 11, 1974. The court ordered Wojtysiak to pay the amount of $70 per month for child support, but did not provide a hearing. The order did not make reference to custody of the child. Although Psyck and Wojtysiak never married, they resided together through June of 1982 when Rodney was almost eight years old.

After the parties separated in 1982, Rodney continued to live with Psyck. Psyck worked 3500 hours a year at two different jobs and thus was often away from home. In 1984, the school district where Rodney attended school diagnosed him as emotionally or behaviorally disabled. Psyck and Wojtysiak both participated in evaluation and education of Rodney. Rodney's problems continued through the 1984–85 school year and the school district recommended placing Rodney in a special class for the 1985–86 school year.

Psyck received a job offer in North Dakota in August 1985. She accepted the offer and made plans to move there with Rodney. Wojtysiak sought a temporary restraining order to restrain Psyck from moving Rodney. On August 28, 1985, the trial court temporarily awarded custody to Wojtysiak. Psyck petitioned this court for extraordinary relief from the temporary custody order. This court denied that re-

quest but ruled that Psyck had legal custody and Wojtysiak had to move for a change in custody, pursuant to Minn.Stat. § 518.-18(d) (1986).

The trial court appointed a guardian ad litem to represent Rodney's interests and heard evidence for two days regarding the motion for modification. The court issued its order denying Wojtysiak's request on September 4, 1986 and this appeal followed.

## ISSUES

1. Did the trial court apply the proper standard to this custody proceeding?

2. Was the trial court's denial of appellant's motion to modify custody clearly erroneous?

## ANALYSIS

■ 1. Our review of custody determinations is limited to deciding whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). In addition, the trial court's findings must be sustained unless clearly erroneous. *Id.;* Minn.R.Civ.P. 52.01.

The trial court treated this matter as a motion to modify custody rather than an original determination of custody. The standards applicable to these motions are quite different. If a custody proceeding is concurrent or consolidated with a paternity action and the matter under consideration is the original determination of custody, the court must apply the standards set out in Minn.Stat. § 518.17 (1986). *Morey v. Peppin*, 375 N.W.2d 19, 23–24 (Minn.1985). That statute requires the court to consider the best interests of the child to determine who will have custody of the child. Minn. Stat. § 518.17, subd. 3 (1986).

If the custody proceeding is commenced after the conclusion of the paternity action, the court must treat the action as one seeking a modification of the custody order entered in the paternity action and must apply the standards of Minn.Stat. § 518.-18(d) (1986). *Morey*, 375 N.W.2d at 24.

Section 518.18 is a much more difficult standard to overcome. Among other things, it requires finding:

> The child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Minn.Stat. § 518.18(d)(iii) (1986).

The trial court applied the 518.18 standard. It did so because of an order issued by this court on February 14, 1986. That order denied Psyck's request for a writ of prohibition and stated in part:

> 9. Under the common law effective before enactment of the Minnesota Parentage Act, the mother's legal right to custody of a child born out of wedlock was superior to the father's. *See Morey v. Peppin*, 375 N.W.2d 19, 23 (Minn. 1985).
>
> 10. [Psyck] now has legal custody of Rodney, [and] [Wojtysiak] seeks a modification of custody.

Wojtysiak contends the 518.17 standard should be applied in this case. He claims this case can be distinguished from the *Morey* case and should not be decided by the 518.18 standard. He cites several differences between this case and *Morey*. However, Wojtysiak fails to realize this court has already held that this action be treated as a motion to modify custody, relying on *Morey*. Under the common law prior to enactment of the Minnesota Parentage Act, the mother had the sole right to the custody of a child born out of wedlock. *Morey*, 375 N.W.2d at 21. Because Rodney's paternity was adjudicated before the enactment of the Minnesota Parentage Act, no custody determination was made in the paternity action and Psyck, the mother, had the sole right to the custody of Rodney. Because Psyck had the sole right to custody, this action must be treated as a motion to modify custody. The trial court correctly applied the standards of Minn. Stat. § 518.18 (1986).

2. When the parents do not agree to a change in custody, the trial court must use a three-part analysis to determine if a modification of custody should be made. *Greenlaw v. Greenlaw,* 396 N.W.2d 68, 71 (Minn.Ct.App.1986). First, the court must find that a change has occurred in the circumstances of the children or their custodian. Next, the court must find that the modification of custody is necessary to serve the best interests of the children. Finally, in applying the first two standards, "the court shall retain the custodian established by the prior order" unless it also finds either (a) that the children have been integrated into the family of the parent requesting a change in custody with the consent of the custodial parent or (b) that the children's present environment endangers their physical or emotional health or impairs their emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child. *Id.;* Minn. Stat. § 518.18(d) (1986); *See State on Behalf of Gunderson v. Preuss,* 336 N.W.2d 546, 548 (Minn.1983). The trial court must include findings on all three strands of the modification statute. *In re Marriage of Gottenborg,* 343 N.W.2d 674, 676 (Minn.Ct. App.1984).

Here the trial court specifically mentioned all elements of the modification test. The court made several factual findings in a detailed ten page order and memorandum. Because the court found that no change of circumstances in the child or his custodian had occurred, it denied Wojtysiak's motion without addressing the remaining elements of the test.

The trial court found no change in circumstances, even though Psyck had moved her residence to North Dakota, and made no findings regarding the best interests of Rodney. In *Pfeiffer v. Pfeiffer,* 364 N.W.2d 866 (Minn.Ct.App.1985), this court found a change of residence by the custodial parent was a sufficient change of circumstances to meet that part of the statute and that it would be in the child's best interests to remain in his present school district. This court stated:

Primarily, there has been a change of circumstances in that [the mother] has moved her residence from Pelican Rapids to Mountain Lake, Minnesota, over 200 miles away. Additionally, [the child] has unequivocally stated that he wants to live with his father so he can finish his education in the Pelican Rapids Public Schools.

Next, it would appear the best interests of [the child are] served by the transfer of physical custody to Gale who lives in the Pelican Rapids school district. The psychological effects of a move from one community to another, especially when the move would be against the wishes of [the child] cannot be ignored.

*Id.* at 868.

In the present case, Rodney unequivocally expressed his interest to live with his father. Rodney's guardian ad litem stated that Rodney "desperately wants to remain with his father." The trial court, however, gave no weight to this preference because of the "inability to separate Rodney's reasonably expressed preference for living with his father from his reasonably expressed preference for remaining in Carlton." In light of *Pfeiffer,* this distinction appears unnecessary; it is both reasonable and relevant that the child prefers to remain in the area he presently lives. The fact that Rodney wishes to remain in Carlton and live with his father is relevant to the question of Rodney's best interests. It is well-established that the child's custodial preference is a significant consideration in assessing his best interests and that harm may result if this preference is disregarded. *Johnson v. Smith,* 374 N.W.2d 317 (Minn.Ct.App.1985). We find that a change of circumstances has occurred and that a modification is necessary to serve the child's best interests.

The final element is whether Rodney's present environment endangers his health or impairs his emotional development and whether the harm likely to be caused by a change of environment is outweighed by the advantages of a change to Rodney.

Evidence introduced at trial and several of the trial court's findings indicate that Rodney's emotional development may be impaired by living with his mother. In early 1984 Rodney's school district diagnosed him as being emotionally or behaviorally disabled. The problem continued through the 1984–85 school year and the school recommended that Rodney be placed in a special class for students with problems similar to his. On August 28, 1985, the court awarded temporary custody to Wojtysiak. During the 1985–86 school year Rodney's behavior improved considerably, although his academic skills had not improved in two years. The guardian ad litem testified that Rodney's self-esteem and performance had significantly increased in the time he had been living with his father. Wojtysiak has much more time to spend with Rodney because he works less than Psyck. Psyck worked a full-time job at a factory and often put in overtime hours. Additionally, Psyck owned and operated a bar, working regular shifts there. Because of her busy schedule, Psyck often left Rodney unsupervised at home.

An expert psychologist expressed concern about Rodney's emotional and behavioral problems. The expert believed that if not treated, Rodney may become more manipulative and develop a lower self esteem. The school principal testified that Rodney's behavior impaired his emotional development. The court found that emotionally or behaviorally disabled children like Rodney are more likely to suffer problems when changing schools than children without such disabilities. By staying in Carlton with his father, Rodney could avoid these problems. We conclude that the harm likely to be caused by a change of custody is outweighed by the advantages to Rodney of staying in Carlton with his father.

## DECISION

The trial court used the correct standard to determine whether to modify custody. However, the trial court erred by finding no substantial change of circumstances and by denying Wojtysiak's motion for modification of custody. We reverse and remand for the trial court to transfer custody to Wojtysiak with reasonable visitation to Psyck.

Reversed and Remanded.