Linda Jean **MEIER**, Respondent,

v.

John Francis **CONNELLY**, Appellant.

No. C7–85–726.

Court of Appeals of Minnesota.

Dec. 10, 1985.

Carl E. Norberg, Norberg & Doty, St. Paul, for respondent.

Daniel S. Rethmeier, St. Cloud, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

WOZNIAK, Judge.

Appellant John Connelly appeals from an order modifying an award of joint custody with primary physical custody in him, and awarding custody to respondent Linda Meier with visitation rights to Connelly. We affirm in part and reverse in part.

### FACTS

The parties were divorced in 1983. Pursuant to stipulation, they were awarded joint legal custody of their only child, Justin Connelly, who was born in August 1980. Connelly was awarded primary physical custody of the child.

The decree provided that Justin was to reside primarily with Connelly during the school year. Connelly was required to deliver Justin to Meier for visitation every other weekend; in addition, the decree provided that the child was to be with Meier from June 10 through August 25 of each year; for one week at Easter; one week at Thanksgiving; and one week at Christmas.

Meier was ordered to pay $225 per month child support during the months of September through May. Connelly was ordered to pay the same amount to Meier during the months of June through August.

In late January or early February 1983, before entry of the judgment and decree, Connelly left Minnesota to begin a job as a

chemical dependency counselor in Omaha, Nebraska. He did so without informing Meier, without leaving an address or phone number where he could be reached, and without allowing Justin to say goodbye to his mother. Connelly testified that he did so in order to conceal his whereabouts until the time for an appeal from the original judgment and decree had run, because it was likely that Meier would appeal if she knew of his plans. He claims to have acted on the advice of his former counsel.

In February 1983, Meier went to Connelly's home to pick up Justin for their scheduled visitation. She learned at that time that Connelly no longer lived there. She contacted Connelly's two sisters in an attempt to locate him, but both refused to disclose his location. One of the sisters told Meier that she had promised Connelly she would not disclose his whereabouts.

That same day, Meier received a letter from Connelly providing a post office box number in Omaha but no home address or telephone number. She sent mail there for Justin, and sent every required child support payment.

In June 1983, Connelly terminated his employment and left Omaha. He was required under the terms of the decree to deliver Justin to Meier on June 10 for the summer visitation. He did not do so. Instead, he went to his sister's house in Osakis, Minnesota. He spent three to four weeks in the Osakis/Alexandria area with Justin, but made no attempt to contact Meier or to deliver Justin to her. Instead, he took the child to Providence, Rhode Island, where he had accepted employment at the veterans' hospital.

When he went to Rhode Island, Connelly provided Meier with a false forwarding address in Hollywood, California. He testified that he did this in order to make it more difficult for Meier to find Justin, and that his intent was to conceal his whereabouts from Meier for six months in the hope that another state might take jurisdiction under the Uniform Child Custody Jurisdiction Act. He claims he provided the false address on the advice of his attorney.

In November 1983, Connelly called Meier at her place of employment and allowed the first conversation between mother and son since February of that year.

In November 1983, Connelly commenced an action for modification of custody in the courts of Rhode Island. He represented to the Rhode Island court that Meier had not advised him of her place of residence and that he did not know how to get in touch with her. Meier retained Rhode Island counsel to oppose the motion.

The district court, Stearns County, late in November, asserted continuing jurisdiction and ordered Connelly to return the child to Minnesota for the Christmas 1983 visitation as required by the original decree.

Connelly complied with the order and delivered Justin at Christmas. This was the first time Meier had seen her son since February of that year. At the conclusion of the visitation, Connelly took Justin back to Rhode Island.

In March 1984, Connelly moved with Justin to Seattle, Washington. He did not tell Meier of the move, and did not provide her with his new address or telephone number. In April, he failed to deliver the child to Minnesota for the Easter visitation as required by the original decree.

In May 1984, Meier served on Connelly's counsel a notice of motion and motion for modification of custody. The motion was heard on June 6, 1984. Connelly was not present at the hearing, but he was represented by counsel. On June 15, the district court issued an order, finding that Connelly had failed to comply with the terms of the original judgment and decree and finding him in constructive civil contempt of court. The court transferred temporary custody of Justin to Meier, and ordered a custody study by Stearns County Social Services.

Four days after the hearing, on June 10, 1984, Connelly delivered Justin to Meier for the summer visitation.

On August 16, 1984, Connelly moved to vacate the court's order of June 15, claim-

ing that he did not know of the June 6 hearing. The motion was denied.

In October, Connelly, represented by new counsel, again moved to vacate the June 15 order, alleging in effect that he was prevented from attending the June 6 hearing by acts or omissions of his former counsel. In November, the court ordered that all issues be reserved until a full evidentiary hearing.

The evidentiary hearing was held in January 1985, and the court issued its order in March 1985. The court found that, since the entry of the original judgment and decree, "the circumstances of the parties have changed in that they are unable to cooperate in the rearing of their child, and requirements to support an award of joint custody as provided in Minn.Stat. Sec. 518.-17 are no longer satisfied"; that modification of custody was justified under both Minn.Stat. § 518.175, subd. 4 (1984) and § 518.18(d)(iii) (1984); and that it would be in the best interests of the child to place sole custody in Meier. The court amended the original judgment and decree to provide that Meier shall have custody of the child, and ordered that Connelly be allowed only supervised visitation until such time as he shall post a $10,000 bond to insure the child's return from unsupervised visitation; that claimed arrearages in child support should be forgiven; and that Connelly should pay child support in the amount of $250 per month. Appellant appeals from this order amending the original judgment and decree.

## ISSUES

1. Is an order modifying a dissolution judgment and decree an appealable order?

2. Did the trial court abuse its discretion in terminating the joint custody and placing sole custody of the child in respondent?

3. Did the trial court abuse its discretion in ordering that appellant have only supervised visitation until he posts a $10,-000 bond to insure the child's return from unsupervised visitation?

4. Did the trial court abuse its discretion in forgiving all child support arrearages owed by either party?

5. Did the trial court abuse its discretion in ordering appellant to pay $250 per month in child support?

## ANALYSIS

■ 1. An order modifying a dissolution judgment and decree is an appealable order. *Angelos v. Angelos*, 367 N.W.2d 518 (Minn.1985). In *Angelos*, the supreme court stated:

> [M]odification proceedings brought pursuant to sections 518.18 and 518.64 are "special proceedings" within the meaning of Minn.R.Civ.App.P. 103.03(g), which states that appeal may be taken "except as otherwise provided by statute, from a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding." Minn.R.Civ.App.P. 103.03(g). As such, *any final orders—those denying as well as granting modifications of custody, visitation, maintenance, and support— are appealable as of right."*

*Id.* at 520 (footnotes omitted) (emphasis added). This appeal is therefore properly brought as of right pursuant to rule 103.-03(g).

2. Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705 (Minn.1985). The trial court's findings must be sustained unless clearly erroneous. *Id.* When reviewing the record, this court must view the evidence in the light most favorable to the trial court's findings. *Hansen v. Hansen*, 284 Minn. 1, 169 N.W.2d 12 (1969). The overriding principle is the best interests of the child. Minn.Stat. § 518.17, subd. 3 (1984); *Pikula*, 374 N.W.2d 705.

Minn.Stat. § 518.18 governs modification of custody orders. Section 518.18(d) provides in relevant part:

(d) If the court has jurisdiction to determine child custody matters, the court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by prior order unless:

\*    \*    \*    \*    \*    \*

(iii) The child's present environment endangers his physical or emotional health or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

■ Thus, for a custody modification, the trial court must make specific findings that: (1) a change in circumstances has occurred; (2) a modification is necessary to serve the child's best interests; and (3) the child's present environment endangers the child's health or impairs his emotional development and the harm likely to be caused by the change is outweighed by the advantages of the change. *Gottenborg v. Gottenborg,* 343 N.W.2d 674, 676 (Minn.Ct. App.1984); *State ex rel. Gunderson v. Preuss,* 336 N.W.2d 546, 548 (Minn.1983.

Here, the trial court made the required findings under the *Gunderson* three-part test, and there is ample evidence in the record to support them. First, there can be no question that a change in circumstances has occurred. The trial court found that:

Since the entry of the said Judgment and Decree, the circumstances of the parties have changed in that they are unable to cooperate in the rearing of their child, and requirements to support an award of joint custody as provided in Minn.Stat. Sec. 518.17 are no longer satisfied.

This finding was not clearly erroneous.

Second, the trial court found that "[m]odification of the said Judgment and

Decree is necessary to serve the best interests of the child." In light of the evidence in this case, this finding was not clearly erroneous.

Third, the trial court found that:

[t]he child's environment while in the physical custody of [Connelly] with denial of access through visitation to [Meier] impairs his emotional development, and any harm likely to be caused by placing sole custody in [Meier] is outweighed by the advantage thereof to the child.

■ Minn.Stat. § 518.18(d)(iii) requires a showing of actual endangerment. *See Rinker v. Rinker,* 358 N.W.2d .165, 168 (Minn.Ct.App.1984). Here, the trial court's finding that such endangerment existed is amply supported by the record. Robert Franseen, a social worker for Stearns County Social Service Center, prepared the custody study for the modification hearing and testified at the hearing. When asked whether Justin's environment with his father endangered Justin's physical or emotional health, Franseen stated, "I'm very concerned about what has happened to the child's emotional health." He testified that Connelly's persistent denial to Justin of access to his mother:

significantly increases the possibility that this child will have problems later on, either as a teenager or in adult life, in relationship with his own children, and his relationship with other adults. I have no doubt in my mind that this—to deprive a child of access of a parent in the way in which it has been done in this case is detrimental to the child.

In light of this testimony, it cannot be argued that the trial court's finding of endangerment was clearly erroneous.

The trial court found that the harm caused by modification of custody was outweighed by the benefit to the child, and that the modification was in the best interests of the child. These findings were not clearly erroneous. The trial court adopted the recommendation of Mr. Franseen's custody report that Meier have primary legal and physical custody of Justin. Mr. Franseen stated in his report:

It is clear that Linda Meier has a deep attachment for this child. She seems to be a sensitive, caring, loving mother who is very much aware of Justin's needs, both psychologically and physically. It appears as if she is very much at ease with Justin and allows him the freedom to explore and to grow. She seems to be less dominating and controlling than John Connelly. *In contrast to John Connelly, Linda Meier has clear awareness of Justin's need for his father and for him to have a relationship with his father. She seems to recognize that Justin needs both of them. This is in sharp contrast to John Connelly's view that Justin needs only him.*

(Emphasis supplied.) At the hearing, Meier was asked how much visitation she would like Justin to have with Connelly. She answered:

I want as much as possible. In light of what has happened, it is difficult to be trusting—the fact that I would not see my son again if I leave him out of my sight or give him to John, but I'm comfortable with supervision at this point. I want Justin to see John. * * *. He loves his father. He needs that. I would never deny it.

Justin has lived with Meier since the temporary order of June 15, 1984. Meier has been employed for four years as a registered nurse in the psychiatric unit at the St. Cloud Veterans Hospital. She works a steady day shift, so she is with Justin most evenings. Connelly has been employed by the Waseca Hospital as a counselor at a program in Faribault, Minnesota since October 29, 1984. His work schedule is from noon to 10 P.M. The record thus indicates that, as between the two parents, Meier has the more stable employment and is able to spend more time with Justin during the workweek.

■ In light of the evidence in the record, the trial court clearly acted within its discretion in finding that a modification of custody was in the best interests of the child and was justified under Minn.Stat. § 518.18(d)(iii).

In addition to the factors set out in Minn. Stat. § 518.18, the trial court's reversal of custody is supported by Minn.Stat. § 518.-175, subd. 4, which provides that "Proof of an unwarranted denial of or interference with duly established visitation may constitute contempt of court and may be sufficient cause for reversal of custody." The Minnesota Supreme Court has held that:

in addition to the *Gunderson* three-part test, unwarranted denial of or interference with visitation is one factor to be considered in determining whether custody orders should be modified. In and of itself an unwarranted denial of or interference with visitation is not controlling. Rather, it is to be considered along with Minn.Stat. § 518.18(d) as construed by *Gunderson.*

*Grein v. Grein,* 364 N.W.2d 383, 386 (Minn. 1985) (footnote omitted). Here, the court found that:

[s]ince the entry of the said Judgment and Decree, there has been a consistent and unwarranted denial on the part of [Connelly] of visitation rights of [Meier] sufficient to support a modification of custody.

This finding is amply supported by the record in this case and, in conjunction with the three-part *Gunderson* test, supports the trial court's modification of custody.

■ 3. The trial court ordered that Connelly have only supervised visitation, arranged through Stearns County Social Services, until he posts a $10,000 bond to insure the return of the child from unsupervised visitation. This was not an abuse of discretion.

Minn.Stat. § 518.176, subd. 2 (1984), provides that supervised visitation may be ordered "if the court finds that in the absence of the order the child's physical or emotional health is likely to be endangered or his emotional development impaired * * *." Here, the court found that the consistent denial to Justin of access to his mother while he was in his father's custody impairs his emotional development, and that supervised visitation by Connelly was

necessary because of Connelly's pattern of consistent denial of visitation to Meier. This finding was not clearly erroneous.

The use of a bond to secure the return of a child from unsupervised visitation was approved by the supreme court in *Tischendorf v. Tischendorf*, 321 N.W.2d 405 (Minn. 1982). In *Shepard v. Shepard*, 352 N.W.2d 42 (Minn.Ct.App.1984), this court reversed a trial court order that a father post a $5000 bond as a condition of exercising visitation, on the grounds that there was no finding of danger to the child's physical or emotional health or emotional development, and no indication that the father might not return the child from visitation. Here, on the other hand, there has been a finding of danger to emotional health and emotional development, and Connelly's past treatment of visitation clearly indicates the reasonableness of requiring some form of security to ensure the return of the child.

4. The trial court forgave all arrearages in child support owed by either party. Connelly claimed at trial that he is owed past due child support in the amount of $2025, representing the period from September 1983 through May 1984, the time during which he was concealing his and Justin's whereabouts from Meier. Meier claimed past due child support in the amount of $1350, representing the period from June through August 1983, when Justin should have been with her but was instead with Connelly, and June through August 1984, when Justin was with her under the temporary order of June 15, 1984.

■ Modification of the child support provisions of a divorce decree is within the sound discretion of the trial court and will not be reversed in the absence of "an abuse of discretion in the sense that the order is arbitrary or unreasonable or without evidentiary support." *Bledsoe v. Bledsoe*, 344 N.W.2d 892, 895 (Minn.Ct.App.1984) (quoting *Smith v. Smith*, 282 Minn. 190, 193, 163 N.W.2d 852, 856 (1968)). The court's authority to modify support decrees is provided by Minn.Stat. § 518.64, subd. 2 (1984), which provides:

The terms of a decree respecting maintenance or support may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; (3) receipt of assistance under sections 256.72 to 256.87; or (4) a change in the cost-of-living for either party as measured by the federal bureau of statistics, any of which makes the terms unreasonable and unfair. On a motion for modification of support, the court shall take into consideration the needs of the children and the financial circumstances of each party's spouse, if any. *A modification which decreases support or maintenance may be made retroactive only upon a showing that any failure to pay in accord with the terms of the original order was not willful.*

(Emphasis added.) The moving party has the burden of proof. *Johnson v. Johnson*, 304 Minn. 583, 584, 232 N.W.2d 204, 205 (1975). He must show (1) a substantial change of circumstances, and (2) that none of his past failures to pay were willful. Minn.Stat. § 518.64, subd. 2; *Bledsoe v. Bledsoe*, 344 N.W.2d at 895.

■ Here, the trial court's forgiveness of claimed arrearages owed by Meier was within the court's discretion. When Connelly left Minnesota for Omaha with the child in 1983, the only indication he provided to Meier as to his whereabouts was a post office box. Despite the fact that this was the only address available to her, Meier sent every required child support payment until June 1983, when Connelly was required to start paying support to her. She did not resume payment in September 1983 because Connelly did not provide her with an address to which to send payment. There has been no showing that Meier's failure to pay support after September 1983 was willful. The trial court therefore did not abuse its discretion in forgiving the arrearages owed by Meier.

■ The forgiveness of claimed arrearages owed by Connelly, however, was not within the trial court's discretion and must

be reversed. Connelly admitted on the stand that he never sent Meier any of the required child support payments. His rationale for not making the payments in 1983 was that, because he didn't return Justin for the summer visitation as required, he shouldn't have to pay support either: "Well, your child support payment is supposed to be for the care of the child. How in the hell could it be used for the care of Justin when he was with me." He stated that he didn't pay in 1984 because his lawyer advised him not to. In light of the willfulness of Connelly's failure to pay, the statute requires that the arrearages not be forgiven. The trial court does, of course, have the discretion to order that Connelly repay the arrearages in installments over a reasonable period of time.

■ 5. The trial court ordered Connelly to pay child support in the amount of $250 per month. Connelly claims that this order was an abuse of discretion because there was no testimony regarding his net monthly income.

This argument is without merit. Connelly testified at the hearing as to both his gross and net income. When asked what his current salary was, Connelly answered, "$1,400.00 a month, probably; something like that." The following exchange then took place:

Q. What is your take home?

A. I don't know. I just—I never really counted it. Every check—every other check I pay my attorney. I just never keep track of it.

Q. You don't know how much your check is?

A. I have more important things I have to concentrate on; $1,200.00, probably, $1,100.00. I'm not sure.

Q. But your gross is $1,400.00?

A. Yes, approximately.

This testimony provided a sufficient basis for determining Connelly's obligations under the child support guidelines, Minn.Stat. § 518.551, subd. 5 (1984).

Appellant's citation of *Otte v. Otte*, 368 N.W.2d 293 (Minn.Ct.App.1985), is inapposite. That case, like *Knott v. Knott*, 358 N.W.2d 493 (Minn.Ct.App.1984), dealt with the complexity of determining the net income of a self-employed farmer because of the business and depreciation deductions taken for the farm. In both cases, this court remanded for the taking of new evidence, including expert testimony, in order to construct a more accurate net disposable income figure. A remand on this issue is unnecessary here. Connelly's own testimony provided a sufficient basis for determining his child support obligations. Any incompleteness in the trial court record is due to Connelly's own evasiveness on this issue.

## DECISION

1. This appeal was properly brought as of right pursuant to Minn.R.Civ.App.P. 103.03(g).

2. The trial court's order terminating joint custody and awarding legal and physical custody to respondent is affirmed.

3. The trial court's order that appellant have only supervised visitation until he posts a $10,000 bond to insure the return of the child from unsupervised visitation is affirmed.

4. The trial court's forgiveness of child support arrearages owed by respondent was within the court's discretion and is affirmed. The court's forgiveness of arrearages owed by appellant, however, must be reversed because the record clearly indicates that appellant's past failure to pay child support was willful.

5. The trial court's order that appellant pay $250 per month in child support is affirmed.

Affirmed in part and reversed in part.