**In re the Marriage of Martha DOWNEY, f.k.a. Martha Zwigart, Petitioner, Appellant.**

v.

**Robert Charles ZWIGART, Sr., Respondent.**

No. C0–85–566.

Court of Appeals of Minnesota.

Dec. 10, 1985.

Jennifer R. Wellner, Duranske & Wellner, Bemidji, for appellant.

Robert Charles Zwigart, Sr., pro se.

Heard, considered and decided by CRIPPEN, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

This appeal is from an order denying an evidentiary hearing on appellant's motion to modify the custody provisions of a dissolution decree. We reverse and remand.

### FACTS

Martha Downey and Robert Zwigart were married July 29, 1978. A child, Robert Jr., was born in May 1979. From early 1980 until October 28, 1981, Robert Jr. was in the care of his mother while his father was overseas in the military. In October 1981 the parties were divorced in Wichita, Kansas, and Robert Zwigart was granted custody of the child. According to Dow-

ney, the parties agreed that Zwigart should have legal custody so that he could gain early release from the military as a single parent. The understanding, according to Downey, was that she would have actual and permanent physical custody of Robert.

Downey and Zwigart lived together after the divorce until sometime between January and March of 1983. Zwigart left Robert Jr. with Downey until October or November of 1983, when Robert Jr. went to Abilene, Kansas, to live with his father. Approximately seven months later, in June 1984, Robert Jr. returned to Bemidji, Minnesota, to live with Downey; her new husband, Jeff Downey; and Downey's daughter, Chandrika. The parties agreed that the visit was to be only for the summer, but Zwigart did not come for his son as planned. In late November 1984, Zwigart informed Downey of his immediate plans to take Robert Jr. to live with him in Pittsburgh, Pennsylvania.

On November 28, 1984, Downey applied for an ex-parte order for the temporary care, custody and control of Robert Jr. The motion was supported by two affidavits; one by Downey recited the chronology of the child's custodial history, stated that the child had become integrated into her family and concluded that it would be in his best interests to reside with her permanently. The other affidavit, by Downey's attorney, dealt with the issue of the court's jurisdiction over the matter.

On December 5, the day the temporary order was granted, Downey moved for a permanent change of custody. The hearing date was set for December 17. When it became apparent, on the latter date, that Zwigart needed more time to prepare for an appearance before the court, the hearing date was postponed until December 20.

There is confusion, at least on the part of Downey's attorney, about the purpose for the hearing. She believed the purpose was to consider only the continuation of the order for temporary custody and the court's jurisdiction. At the hearing, Downey's testimony was limited to the contents of her affidavit. Downey had agreed that Zwigart could present oral testimony because he was not represented by counsel and had filed no affidavit in opposition to her motion. Downey was permitted to present the oral testimony of Jeff Downey and to rebut points made by Zwigart. Zwigart was cross-examined by Downey's attorney.

On December 31, 1984, the trial court denied Downey's motion for modification of custody and for an evidentiary hearing on the ground that she had not met her burden of establishing on a preliminary basis that a significant change of circumstances had occurred. The court's memorandum provides "there was no showing that the child was unhappy with his father or that continued custody with the father would be in any way detrimental to the child."

On January 10, 1985, Downey moved the court to reconsider its order. Accompanying the request were two affidavits, one of counsel and one of Downey. Counsel's affidavit sets forth her confusion on the scope of the hearing and states that she would not have agreed to have put her client in "the disadvantageous position of having to rely on written testimony" had she realized the hearing was to resolve the issue of permanent custody. Downey's affidavit again recounted the chronology and described events which suggested that Robert Jr.'s psychological and emotional needs were not being met by Zwigart. Specifically, Downey stated that the child, when four years old, was required by Zwigart to wear diapers during the day, as well as the night, because of a bed-wetting problem. She also stated that after returning to her home in June 1984, the child, at the sound of a raised voice, "would grab a blanket and go into the bathroom and cover himself up, saying he was not a good boy, that he was a bad boy, that he was ugly and nobody liked him."

On January 23, 1985, the trial court denied the request for reconsideration, stating that the *initial* motion did not contain allegations that the child's emotional and physical well-being was in danger and that "[s]omewhere there has to be an end to

litigation." Downey appeals from the original order and the order denying the request for reconsideration.

## ISSUE

Did the trial court abuse its discretion in denying the motion for modification of the original custody award without the benefit of an evidentiary hearing?

## ANALYSIS

Downey argues that the trial court abused its discretion in denying her motion to modify custody without affording her an opportunity for an evidentiary hearing. The modification of custody is governed by Minn.Stat. § 518.18(d), which provides:

If the court has jurisdiction to determine child custody matters, the court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior order unless:

(i) The custodian agrees to the modification;

(ii) The child has been integrated into the family of the petitioner with the consent of the custodian; or

(iii) The child's present environment endangers his physical or emotional health or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

The burden is on the moving party to establish on a preliminary basis that a

change of circumstances has occurred and that modification is necessary to serve the best interests of the child. *See Nice-Petersen v. Nice-Petersen,* 310 N.W.2d 471, 472 (Minn.1981). Next, that parent must satisfy any one of the conditions described in subdivisions (i)–(iii) of Minn.Stat. § 518.-18(d). *Pfeiffer v. Pfeiffer,* 364 N.W.2d 866, 868 (Minn.Ct.App.1985). In other words, a showing of endangerment is not required under § 518.18(d)(iii) when the moving party establishes consensual integration under § 518.18(d)(ii). If the affidavits accompanying the motion for modification do not allege sufficient facts to allow a court to reach the required findings, the trial court should deny the motion and no evidentiary hearing is needed. *See Englund v. Englund,* 352 N.W.2d 800, 802 (Minn.Ct.App. 1984).

The affidavits and testimony provide an undisputed prima facie case for modification. First, there is a change of circumstances because Zwigart intended to move Robert Jr. to Pennsylvania.[1] *See Pfeiffer v. Pfeiffer,* 364 N.W.2d at 868. While it is true that he had been living in Kansas, Downey had friends and relatives there facilitating communication between the mother and son. Zwigart planned to live with a family in Pittsburgh whom Robert Jr. had never met.

Further, Downey has made a preliminary showing under § 518.18(d)(ii) that Robert Jr. has been integrated into her family with Zwigart's consent. He is five years old and at the time of the request for hearing had lived with his mother for all but seven months of his life. Furthermore, it was not disputed that Robert Jr. enjoyed a close relationship with his half-sister, Chandrika. In fact, Zwigart testified that he allowed Robert Jr. to stay with Chandrika until "[he] could get [himself] together."

---

1. This case, although based on a motion to modify custody, is factually similar to cases in which a custodial parent wishing to move the residence of the child to another state is required to obtain a court order under Minn.Stat. § 518.-175, subd. 3. The analysis is the same as applied to these facts: Unless Downey makes a prima facie showing against removal, permission may be granted to Zwigart, the custodial parent, without an evidentiary hearing. *See Auge v. Auge,* 334 N.W.2d 393, 399 (Minn.1983).

Finally, although disputed, Zwigart's testimony and affidavits would support a finding that modification is necessary to serve Robert Jr.'s best interests. Modification would provide continuity of care of the primary caretaker, and Downey's second affidavit suggests that the child's emotional development was being impaired by his custodial relationship with his father. Specifically, she alleges that the child had been humiliated and deprived of affection.

Thus, there was sufficient evidence to warrant the trial court's consideration of a modification order, and the parties are entitled to an evidentiary hearing.

## DECISION

Downey presented a prima facie case under Minn.Stat. § 518.18(d) to justify an evidentiary hearing on her motion to modify the original custody order.

Reversed and remanded.