**In re the Marriage of Bruce GREENLAW, Appellant,**

v.

**Natalie GREENLAW, Respondent.**

**No. C9-86-897.**

Court of Appeals of Minnesota.

Nov. 10, 1986.

R.W. Irvine, Detroit Lakes, for appellant.

Brant R. Beeson, Detroit Lakes, for respondent.

Considered and decided by POPOVICH, C.J., and LANSING, and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

This appeal questions whether the statutory standards permit the trial court's decision to modify custody from sole legal and physical custody in appellant Bruce Greenlaw to joint legal and physical custody in appellant and respondent Natalie Greenlaw. The trial court's joint custody order included a divided custody arrangement under which each party has custody of their children for a block of each school year and for alternating two-week intervals during the summer months. Bruce Greenlaw appeals. We reverse and remand.

## FACTS

After six years of marriage, Bruce and Natalie Greenlaw separated in March 1981. At that time their oldest child Nathan was five years old, their daughter Melissa was four, and their daughter Raimy was two and one-half. After the separation, Bruce Greenlaw stayed with the children in Wahpeton, North Dakota, where the family had moved in 1976 from their home town of Detroit Lakes, Minnesota. Respondent moved to Sioux Falls, South Dakota, where she obtained employment in a furniture store.

Appellant later petitioned for divorce, but respondent failed to answer the petition. A North Dakota court entered a default dissolution judgment in February 1983. The court granted sole legal and physical custody to appellant, who the court found had "carried out both the father and mother role for virtually the last three years of the marriage." The court granted respondent reasonable visitation rights, and she regularly drove the 250 miles to Wahpeton to see the children.

In the fall of 1983, appellant quit his job in Wahpeton and returned with the children to Detroit Lakes, where they began living with appellant's parents. Appellant was unemployed through the winter, but started work at a lumber yard in June 1984. Respondent continued to visit the children on a regular basis by driving the 300 miles between Sioux Falls and Detroit Lakes. Respondent, however, claims that at times appellant interfered with and prevented her visitations, both in Wahpeton and in Detroit Lakes. The trial court found that during some of the visitations in Detroit Lakes appellant would not let respondent see the children. Respondent further claims that she frequently attempted to call the children and that appellant often frustrated her efforts to talk to the children on the telephone.

In October 1984, the parties agreed to try living together again. Respondent quit her job in Sioux Falls and arranged to work at a furniture store in Detroit Lakes. The family moved into a house owned by appellant's grandparents. Their agreement, however, was shortlived, and respondent soon began to spend nights at the homes of friends or relatives. Since March 1985, the parties have lived separately. The court found that after April 1985, the relationship of the parties had involved constant dissension, including denial by appellant of respondent's visitation contacts.

In September 1985, respondent moved for a modification of the custody order, asking for either sole physical custody or a shared custody arrangement. Following a modification hearing in April 1986, the court issued findings of fact and concluded that the parties should have joint legal custody and divided physical custody of the children. The court granted appellant physical custody of the children from January 1 through May 31 of each year. During the summer months, custody is to rotate between the parents in two week intervals. Respondent will then have custody from September 1 through December 31 of each year. During the long custodial periods, the court ordered visitation for the non-custodial parent of every other weekend and of every Wednesday after school until Thursday morning before school.

The court based these conclusions on its findings that a material change had occurred in the parties' circumstances since their divorce in 1983 and that the best interests of the children required a change

in custody. The court also found that appellant without warrant had willfully denied respondent visitation with the children. Bruce Greenlaw appeals, claiming that the findings and conclusions are not supported by the evidence and that a modification is not allowable under the controlling statutory standards.

## ISSUE

Do the record and the findings permit a custody modification under the controlling statutory standards?

## ANALYSIS

### 1.

Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). In addition, the trial court's findings must be sustained unless clearly erroneous. *Id.;* Minn. R.Civ.P. 52.01. The guiding principle in all custody cases is the best interests of the child. *Pikula*, 374 N.W.2d at 711; Minn. Stat. § 518.18(d) (1984). Here, because of unsupported findings of fact as to a substantial change of circumstances and because of an absence of findings or evidence sufficient to permit modification under Minnesota law, we must reinstate the prior award of custody.

### 2.

■ When the parents do not agree to a change in custody, the court must justify any modification with a three-part analysis:

First, it must be determined that a change has occurred in the circumstances of the children or their custodian. Second, it must be found that the modification of custody is necessary to serve the best interests of the children. Third, in applying the first two standards, "the court shall retain the custodian established by the prior order" unless it also finds either (a) that the children have been integrated into the family of the parent requesting a change in custody with the consent of the custodial parent or (b) that the children's present environment endangers their physical or emotional health or impairs their emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the children. Minn.Stat. § 518.18(d) (1984).[1] *See Gunderson v. Preuss*, 336 N.W.2d 546, 548 (Minn.1983). In *Gunderson*, the supreme court held:

> the statute should be construed to require findings on the effect of the child's present environment on his physical and emotional well-being and a weighing of the harm the child would suffer from a change of environment against the advantage to be derived from the change. Specific findings on these matters will insure compliance with section 518.18 and will also aid appellate review. *See Peterson v. Peterson*, 308 Minn. 297, 242 N.W.2d 88, 94 (1976).

*Id.* (footnote omitted).

■ In addition, when the parties allege that there has been a "persistent and willful denial or interference with visitation,"

---

**1.** The trial judge commented in chambers that the brief period during which the parties lived together constituted an integration of the children into respondent's family with appellant's consent. If this were so, and assuming *arguendo* that the findings on a change in circumstances and the best interests of the children are not clearly erroneous, there would be no need for findings on the endangerment and harm factors. *See* Minn.Stat. § 518.18(d) (when the custodial parent does not agree to the modification, court must find either integration into the non-custodial parent's family or endangerment and harm). Ultimately, however, the trial court did not find that an integration had occurred.

Moreover, such a finding would be clearly erroneous, given that cases applying this subsection have consistently found that integration into "the family of the parent requesting a change in custody" refers to the non-custodial parent's separate household and not to a reunited household of the children's parents. *See, e.g., Downey v. Zwigart*, 378 N.W.2d 639 (Minn.Ct.App.1985); *Peterson v. Peterson*, 365 N.W.2d 315 (Minn.Ct. App.1985), *pet. for rev. denied*, (June 14, 1985); *Pfeiffer v. Pfeiffer*, 364 N.W.2d 866 (Minn.Ct. App.1985). Accordingly, modification here is appropriate only if supported by findings on endangerment and harm.

the court must consider this as an additional factor bearing on whether the custody order should be modified. *See Grein v. Grein*, 364 N.W.2d 383, 386 (Minn.1985). *Grein* clarified an apparent inconsistency between the specific criteria contained in section 518.18(d) and the declaration in Minn.Stat. § 518.175 subd. 4 that proof of an unwarranted denial of or interference with visitation "may be sufficient cause for reversal of custody." The supreme court held that unwarranted interference with visitation is not controlling" "in .and of itself." *Id.* "Rather, it is to be considered along with Minn.Stat. § 518.18(d) as construed by *Gunderson.*" *Id.*

3.

Although the trial court made findings as to a change in circumstances and the best interests of the children, it did not find that the children are endangered by their present environment, nor do any of its findings suggest this danger. The statute "requires a showing of actual endangerment." *Meier v. Connelly*, 378 N.W.2d 812, 816 (Minn.Ct.App.1985) (citing *Rinker v. Rinker*, 358 N.W.2d 165, 168 (Minn.Ct.App. 1984)). Instead, many of the court's findings question the worthiness of the employment efforts of both parents. The findings reveal a respect for respondent's strong work ethic and a distaste for appellant's preference for seasonal sports-related employment. The findings also question appellant's reliance on his parents' financial support.

■ Whether or not the trial court has accurately assessed diverse values of the parties, the findings do not indicate that appellant's way of life endangers the children. To the contrary, the children benefit from the additional time appellant has to spend with them when he is not working and from their participation with him in various sports. Moreover, the court found that the children are bright, do well in school, and appear to be healthy, normal children. Respondent testified she had no worries about appellant's care of the children. There is no probative evidence that

the children's present environment endangers or impairs them in any way.

Similarly, the trial court did not find that a balancing of harms supports a change of custody, and made no findings on the potential for harm. Several facts indicate that harm will result from a change.

■ First, a change contradicts the children's expressed desire to remain with their father. The Minnesota Supreme Court has long recognized that regard for children's best interests includes consideration of their custodial preference, and that harm may result if their preference is disregarded. *Gauthier v. Walter*, 110 Minn. 103, 106, 124 N.W. 634, 635 (1910); *see also State ex rel. Feeley v. Williams*, 176 Minn. 193, 197, 222 N.W. 927, 928 (1929). This recognition has been codified into the custody statute. Minn.Stat. § 518.17 subd. 1(b) (1984). Here, the potential for harm is further evidenced by the children's concern that if they were to live with their mother, she might not let them see their father.

Second, the statutory scheme is designed to protect stability and to avoid disturbing settled custody arrangements. *See Auge v. Auge*, 334 N.W.2d 393, 396 n. 3 (Minn. 1983); *High v. High*, 297 Minn. 512, 513, 210 N.W.2d 309, 310 (1973). The custody study states the "children are secure with their father and their school" and that at "this time, the children are happy and well adjusted." The report adds: "It may be detrimental to expose them to a high degree of parental conflict." Nothing in the record indicates a lack of stability in the children's living arrangement with their father or any special need to disturb that arrangement.

Third, the supreme court has recognized the harm in utilizing divided custody arrangements as a means of meeting the parents' desires. *McDermott v. McDermott*, 192 Minn. 32, 36, 255 N.W. 247, 248 (1934) (when determining custody, the welfare of the child is paramount and the rights of parents must yield to that consideration). *See also Brauer v. Brauer*, 384 N.W.2d 595, 598–99 (Minn.Ct.App.1986).

Again, nothing in the record shows that this harm would be avoided by the custody arrangement ordered here, or that special circumstances justify such a division in custody.

In sum, there is no cause here to conclude that the harm likely to be caused by a change of environment is outweighed by the possible advantages of a change. Absent findings or indications in the record that the trial court considered the potential for endangerment and the likelihood of harm, the court's findings on a change in circumstances and the children's best interests cannot be upheld. A complete analysis under section 518.18(d) must include findings on all three strands of the modification statute. *In re Marriage of Gottenborg*, 343 N.W.2d 674, 676 (Minn.Ct.App. 1984).

### 4.

As noted earlier, interference with visitation is a factor to be considered in addition to the three-part *Gunderson* test. *Grein*, 364 N.W.2d at 386. If the trial court's determination is sustained because of its findings on appellant's interference with visitation, in this instance that would be the sole basis, there being no other statutory indicators for change.

It is undisputed that problems frequently arose over the terms of the parties' informal visitation agreement. For example, appellant acknowledges his past resistance to overnight visitations. He attributes this to his disapproval of the children's exposure to respondent's fiance, whom appellant does not trust. The trial court also found that altercations have occurred over meeting times and places. Nevertheless, weekend visitations during the two months preceding the custody modification hearing were successful, except for one occasion that apparently resulted from a breakdown in communication between the parties' attorneys. Further, the parties as well as the children agree that visitation has occurred very regularly on Wednesday afternoons.

■ The conflict that has existed between the parties has not led to a systematic denial of visitation that by itself would permit a change in the original custody award. Even in those cases where the interference had reached the level of repeated and complete denial of visitation, such denial alone was not sufficient to warrant a change. *Id.; Meier*, 378 N.W.2d at 817. In addition, although the trial court here relied on its finding that appellant interfered with visitation to support its custody modification, it nevertheless included a liberal visitation schedule for both parents, indicating its confidence that visitation can and will continue without interruption. Not only is visitation occurring regularly but the court's program for future visitations includes a clear statement to the parties of its resolve to enforce that program if need be. Appellant's past interference alone does not justify a custody change.

### 5.

■ The choice to divide physical custody between the parents adds to the concern for the trial court's decision. Under current law, divided custody is defined as joint physical custody. *See Brauer*, 384 N.W.2d 598. If its discretion in a custody decision is not abused, the trial court's decision must be affirmed. *See Pikula*, 374 N.W.2d at 710. However, this court has followed the supreme court's declaration against divided physical custody except in exceptional cases. *Brauer*, 384 N.W.2d at 598–99. In addition, the statutory standards preclude the use of either joint physical or joint legal custody if the parties do not cooperate. Minn.Stat. § 518.17, subd. 2(a) (1984). *See Heard v. Heard*, 353 N.W.2d 157, 161–62 (Minn.Ct.App.1984).

This case is similar to *Chapman v. Chapman*, 352 N.W.2d 437 (Minn.Ct.App. 1984). There, the trial court granted the father's motion for joint custody; this court reversed. The parents in *Chapman* were unable to agree or cooperate regarding their children's upbringing. They disagreed about health care, religious training, and the general upbringing of the children. *Id.* at 441. This court held that the trial court:

reversed the standard [for granting joint custody]. Instead of granting joint cus-

tody because the parties *can* cooperate and amicably settle disputes about the children, the judge granted joint custody because they *cannot.* * * *.

The record shows that the parents * * * have not been able to communicate or cooperate in resolving their differences. Joint custody would only exacerbate the problem by dividing authority and increasing opportunities for conflict.

*Id.*

Similarly, the difficulties between the parties here were so pervasive that the court prohibited them from communicating with each other, either directly or indirectly. As in *Chapman,* although the trial court may have believed that the best way to ensure visitation was to effect a partial change of custody, the parents' inability to communicate effectively bodes against the success of joint custody.

### 6.

Appellant also challenges the court's threshold findings that a change of circumstances has occurred and that the best interests of the children require a custody change. Appellant's argument has merit, based on the children's expressed preference and the history of their relationship with their father.

Respondent argues that changes detrimental to the children's best interests include a deterioration in the children's home environment and an increase in appellant's consumption of alcohol. The trial court did not find that the children's home environment had deteriorated. The court did find that respondent claims appellant's house is a mess, that she introduced photographs as evidence of this, and that she has reported this to the county welfare department. However, both the custody study and the county social service worker's report indicated that appellant provides an adequate and clean home for the children. The custody report states that the "house was warm, orderly, and the children had toys and sporting equipment." The social worker's report followed a surprise visit to appellant's home and contained similar positive conclusions.

Neither did the trial court find that appellant's drinking problem had increased since the divorce in 1983. Rather, it found that appellant "probably does have a drinking problem—which may or may not increase in the future—depending on his attitude."

There is remarkably little evidence of substantially changed circumstances. Indeed, the changes that have occurred demonstrate an improvement in the children's circumstances. The move back to the family's hometown of Detroit Lakes has permitted the children to see both sets of grandparents on a regular basis. Appellant's job change has also apparently resulted in a decrease in his alcohol use, since he is no longer working in the alcohol-encouraging environment of the golf course and country club. The physical condition of the house in Detroit Lakes is superior to that in Wahpeton. Now that respondent also lives in Detroit Lakes, visitation is less cumbersome.

### 7.

In sum, the court made no finding that the children's present environment endangers their physical or emotional health or impairs their emotional development and there is no evidence of endangerment in the record. The court made no finding that the harm likely to be caused by a change of environment is outweighed by the advantage of a change. Given the children's happiness with their present situation, the stability of their relationship and living situation with their father, and the disadvantages of joint custody, neither findings nor evidence show that the potential for harm caused by a change outweighs any advantage of a change. Although the evidence supports the conclusion that appellant has interfered with visitation in the past, his interference is insufficient by itself to warrant a change of custody. Finally, the court did not indicate materially changed circumstances or a rationale for the conclusion that the best interests of the children necessitate a change of custody.

Thus, we are compelled to reinstate the original custody order's provisions grant-

ing appellant sole legal and physical custody. Respondent's regular visitation times are established consistent with the following provisions of the trial court order: every Wednesday from the time the children leave school until they return to school on Thursday morning, and every other weekend from after school on Friday until Monday morning before school. We also must remand because the effect of this opinion leaves open the question of visitation during the summer and on holidays. Because the parties have shown their inability to reach an agreement on visitation, the trial court must complete the summer and holiday visitation schedule with specificity.

### DECISION

Because neither the trial court's findings nor the evidence in the record meet the statutory requirements for a change of custody, we reinstate the prior decision that appellant has sole legal and physical custody of the parties' children. Respondent shall have visitation rights consistent with this opinion and the trial court's completed visitation schedule.

Reversed and remanded.