In re the Marriage of Charles B. CLARK, petitioner, Respondent,

v.

Mary Ann BULLARD, f.k.a. Mary Ann Clark, Appellant.

No. C7–86–574.

Court of Appeals of Minnesota.

Nov. 10, 1986.

Gabriel D. Giancola, Barna, Guzy, Merrill, Hynes & Giancola, Ltd., Minneapolis, for respondent.

Doris C. McKinnis, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This is a custody modification action that was decided on remand from the Court of Appeals. Mary Ann Bullard, formerly Mary Ann Clark, appeals from the trial court's third amended judgment, contending that the trial court abused its discretion in transferring custody, in restricting her visitation, in setting child support, and in ordering her to pay $2,000 in attorney's fees. We affirm in part, vacate in part, and remand.

## FACTS

The parties' marriage was dissolved in May 1980. Based upon their stipulation, the original judgment awarded Bullard permanent custody of the parties' minor child, who was born in March 1977. Clark's original award of reasonable visitation was later amended to specify visitation every weekend (Sunday and Monday), every other holiday, and two weeks in the summer.

Clark first moved for a modification of custody after Bullard moved to Florida in July 1982, taking the child with her without, according to his testimony, Clark's permission or knowledge. On May 20, 1983, the trial court denied his motion, modifiying the visitation schedule to reflect the fact that the child lived in Florida. On appeal the supreme court affirmed, adding, "However, in the event that the father's visitation with his child is frustrated by the mother, the matter should be returned by motion to the trial court for its further consideration."

In January 1984 Clark again moved for change of custody, because he had not been able to locate his son for six months due to Bullard's frequent and secretive relocations within the state of Florida. Service was made upon Bullard's attorney, who appeared at the hearing on her behalf when he could not locate her. Based upon Clark's affidavit and the oral arguments of counsel, a Wright County court judge ordered custody transferred to Clark on February 16, 1984. The next day, armed with

the court order, Clark located the child in Florida and brought him to Minnesota, where he has remained since.

Bullard came to Minnesota and moved for relief on the grounds of excusable neglect because she had not been notified of the hearing. On appeal from the denial of her motion, the court of appeals reversed and remanded for a full evidentiary hearing. *Clark v. Clark,* 358 N.W.2d 438 (Minn.Ct.App.1984). The results of that hearing are the subject of this appeal.

The 1,400–page transcript of the evidentiary hearing includes testimony of over 30 witnesses in addition to that of the parties. Forty-three exhibits were admitted into evidence. At the end of trial the court found that on or about August 14, 1983, Bullard moved with the child from Altamonte Springs, Florida, to St. Petersburg, Florida, without telling Clark, leaving a forwarding address, or listing a new phone number; that when Clark's attorney tracked down the child's new elementary school in St. Petersburg, Clark went there in December, only to learn that the child's whereabouts were unknown to the school because he had been removed with no forwarding address or request for transfer of records; that with the help of various government agencies, law enforcement personnel, and his attorney's staff, Clark then learned that the child might have moved to the Fort Lauderdale area; that when Clark went to the Fort Lauderdale school system, he was refused any information without proof of parentage because the school records indicated that the child's father was deceased; that after six months Clark was finally able to locate his son when he returned to Fort Lauderdale armed with court orders from Minnesota and Florida. The court found that Bullard had done "everything possible to secrete the minor child of the parties and thereby frustrate [Clark's] visitation privileges * * *."

Based on those findings, as well as other findings referred to below, the trial court (1) transferred custody to Clark; (2) gave Bullard reasonable visitation supervised by social services and allowed out-of-state vis-

its only by court order or mutual agreement of the parties; (3) ordered that Bullard pay child support according to the guidelines, taking her spouse's income into consideration; and (4) ordered Bullard to pay $2,000 of Clark's attorney's fees and costs.

## ISSUES

1. Did the trial court abuse its discretion by making findings unsupported by the evidence or by improperly applying the law when it transferred custody to Clark?

2. Did the trial court abuse its discretion in restricting Bullard's visitation to the State of Minnesota and in ordering that it be supervised by social services?

3. Did the trial court abuse its discretion in setting child support, by failing to make specific findings, and by ordering Bullard's spouse's income to be taken into consideration?

4. Did the trial court abuse its discretion by ordering Bullard to pay $2,000 of Clark's attorney's fees?

## DISCUSSION

### I

Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985). When reviewing the record, this court must view the evidence in the light most favorable to the trial court's findings. *Hansen v. Hansen,* 284 Minn. 1, 5, 169 N.W.2d 12, 15 (1969). The trial court's findings must be sustained unless clearly erroneous. *Pikula,* 374 N.W.2d at 710. The overriding principle is the best interests of the child. Minn.Stat. § 518.17, subd. 3 (1984); *Pikula,* 374 N.W.2d at 711.

Bullard contends the trial court failed to apply the custody modification standards mandated by Minn.Stat. § 518.18 (1984) when it transferred custody to Clark.

Minn.Stat. § 518.18(d) provides in relevant part:

(d) If the court has jurisdiction to determine child custody matters, the court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by prior order unless:

\*     \*     \*     \*     \*     \*

(iii) The child's present environment endangers his physical or emotional health or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Under this section, the trial court must conduct a four-part test, making specific findings that (1) a change of circumstances has occurred; (2) a modification is necessary to serve the child's best interests; (3) the child's present environment endangers the child's health or impairs emotional development; and (4) the harm likely caused by the change is outweighed by the advantages of the change. *State on behalf of Gunderson v. Preuss,* 336 N.W.2d 546, 548 (Minn.1983), as cited in *In re the Marriage of Gottenborg,* 343 N.W.2d 674, 676 (Minn. App.1984).

■ In addition to this test, unwarranted denial of, or interference with, visitation is a factor to be considered in determining whether custody orders should be modified. *Grein v. Grein,* 364 N.W.2d 383, 386 (Minn. 1985) (recognizing Minn.Stat. § 518.175, subd. 4, (1984) ("Proof of an unwarranted denial of or interference with duly established visitation \* \* \* may constitute contempt of court and may be sufficient cause for reversal of custody")).

■ Bullard contends the trial court erred by considering facts that arose before the prior custody order of May 1983. While several of the initial findings do indeed recount facts occurring before the prior order, Findings 12 through 36 are devoted to detailing changes *after* that order, concluding:

35. That from August 14, 1983 to February 17, 1984, Petitioner had no contact whatsoever with the minor child due to Respondent's willful denial of visitation privileges.

36. That this Court \* \* \* finds specifically that Respondent, by her actions, has done everything possible to secrete the minor child of the parties and thereby frustrate Petitioner's visitation privileges \* \* \*.

Based on these findings, it is clear that the change on which the court based its decision occurred after the prior order of May 1983. Therefore, the findings detailing events prior to that order do not constitute reversible error.

■ Bullard also contends the trial court erred in making its finding of endangerment. We conclude that the record amply supports this finding. Motivated by her boyfriend's two successive job offers involving salary increases, Bullard moved the child to two different cities within a short time without ensuring that his father knew where he was. As a result, the child was harmed by being denied visitation with his father for six months. *See Meier v. Connelly,* 378 N.W.2d 812, 816 (Minn.Ct.App. 1985) (consistent denial of access to the noncustodial parent impairs a child's emotional development). Contrary to Bullard's assertion that the trial court relied too heavily on this factor, it is justifiably significant to a custody modification decision. *See Grein,* 364 N.W.2d at 385 (trial court's modification of custody was rightly based heavily on interference with visitation rights).

The child's development was also endangered in other ways. As a result of moving, the child was enrolled in two successive schools at the beginning of one school year. He was enrolled late in the first school and was removed shortly thereafter

without a forwarding address or request for transfer of records. In the second school he was enrolled in the wrong grade, due to Bullard's failure to communicate the previous teachers' decision to retain him in kindergarten. As a result, he was harmed by experiencing difficulties in first grade and having to repeat it the following year. Also, according to the testimony of experts at trial, transferring between schools during the critical first part of the year can cause frustration or emotional instability.

In further support of the court's finding of endangerment, the custody study noted, "Recounting what he remembers about being with his mother, [the child] lists moving, [his mother's boyfriend] and [his mother] fighting, fear of [his mother's boyfriend], * * * and being left alone a lot. He could not say anything good he remembers." Finally, a psychological evaluation of the child, comparing his cognitive scores in 1984 and 1985, concluded that he had made impressive gains since living with his father.

■ Bullard contends the trial court failed to balance the harm of removal to the child against the advantages of the change in custody, relying instead on application of the "best interests" criteria of Minn.Stat. § 518.17. From an isolated reading of the trial court's findings, there appears to be some merit to her contention; the court did not specifically mention the balancing process. However, finding number 41 states:

> That since the 17th day of February, 1984, [the child] has lived in a stable, satisfactory environment and that continuity of home and school environment has been maintained wherein it was not while he was living with Respondent.

This finding shows that a balancing process was used by the trial court, a conclusion that is well supported by the other findings as well as the record. In a similar case the supreme court affirmed, reasoning:

> Since all [the] findings were supported in the files and records, it seems clear that the court, although relying heavily on

Minn.Stat. 518.175, subd. (4), made substantially sufficient findings to support modification under Minn.Stat. 518.18(d) and our decision in *Gunderson*. * * * We could, of course, remand the case to the trial court for specific findings as mandated in *Gunderson*. However, it seems clear from reading the files, the record, and the court's findings, on remand the trial court would undoubtedly make findings that comport with the statutory language. In our view, remand for further proceedings would not further the legislative purpose of Minn. Stat. § 518.18 in the circumstances here presented.

*Grein*, 364 N.W.2d at 386–87. Similarly, in this case, in view of the record, the trial court's language was substantially sufficient to satisfy Minn.Stat. § 518.18.

We hold that the trial court did not err in its decision-making process and acted within the proper exercise of its discretion in transferring custody to Clark.

**II**

Bullard contends the trial court abused its discretion in ordering visitation supervised by social services and restricted to in-state visits except by court order or mutual agreement of the parties. This court will not reverse the trial court's decision in matters of visitation rights absent a clear abuse of discretion. *Hennessy v. Stelton*, 302 Minn. 550, 224 N.W.2d 926, 927 (1974). Restrictions pursuant to modification orders are addressed in Minn.Stat. § 518.175, subd. 5 (1984), which provides that "the court shall not restrict a parent's visitation rights unless it finds that the visitation is likely to endanger the child's physical or emotional health or impair his emotional development." Supervised visitation may be ordered "if the court finds that in the absence of the order the child's physical or emotional health is likely to be endangered or his emotional development impaired * * *." Minn.Stat. § 518.176, subd. 2 (1984).

Under both statutes, the key requirement is endangerment. In view of its well-supported finding of endangerment, we hold that the trial court did not abuse its discretion in ordering Bullard's visitation restricted to in-state visits supervised by social services. *See Meier*, 378 N.W.2d at 817–18 (supervised visitation necessary because of pattern of consistent denial of visitation, which endangered the child's emotional development).

### III

Bullard contends the court erred in failing to make appropriate findings and in ordering her spouse's income to be taken into account in setting child support. "[I]n all child support cases not involving public assistance, the trial court must make specific findings of fact as to the factors it considered in formulating the award." *Moylan v. Moylan*, 384 N.W.2d 859, 863 (Minn.1986). The factors to be considered in making a child support award are set forth in Minn.Stat. § 518.551, subd. 5 (1984). Here, the trial court summarily found:

> The testimony of Respondent and her spouse, Michael Bullard, disclosed that both have been continuously employed in the circuit board industry, earning a combined income sufficient to contribute to the support of the minor child * * *.

This does not meet the specificity requirement of *Moylan*. We vacate the child support order and remand to the trial court for specific findings and for further hearings as necessary. In making its order on remand, the trial court shall follow the revised version of Minn.Stat. § 518.64, subd. 2 (effective August 1, 1986), which mandates that the court "shall not consider the financial circumstances of each party's spouse * * *." 1986 Minn.Laws ch. 406, § 8. *See Hadrava v. Hadrava*, 357 N.W.2d 376, 379 (Minn.Ct.App.1984).

### IV

Finally, Bullard contends the trial court abused its discretion in ordering her to pay $2,000 of Clark's attorney fees and costs without making specific findings as to the income and resources of either party or the legal expenses incurred. However, Minn.Stat. § 518.14 (1984) gives the trial court broad discretion in determining whether to award attorney's fees. Since the trial court observed the services performed and can accurately assess their value, we cannot say that it abused its discretion in awarding Clark this portion of his total attorney's costs.

### DECISION

The judgment is affirmed as to custody modification, visitation, and attorney's fees. The child support order is vacated and remanded.

Affirmed in part, vacated in part, and remanded.