In re the Marriage of William Theodore **HAUGBERG**, Petitioner, Respondent,

v.

Brenda Lou **HAUGBERG**, Appellant.

No. C4–86–2086.

Court of Appeals of Minnesota.

May 26, 1987.

Michael W. McDonald, Prior Lake, for respondent.

Ann K. Leppanen, St. Paul, Paul N. Onkka, Jr., Southern Minnesota Regional Legal Services, Chaska, for appellant.

Considered and decided by CRIPPEN, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This appeal is from a judgment modifying custody by placing custody of the three minor children with respondent William Haugberg. We affirm.

## FACTS

Appellant Brenda Lou Haugberg and respondent William Theodore Haugberg have three children, D.H., aged 7, and twins K.H. and K.H., aged 3 at the time of the hearing. The parties were divorced on February 13, 1985, stipulating that custody should be granted to Brenda.

On December 3, 1985, K.H., then 3 years old, was allegedly sexually abused. William had picked K.H. up for visitation that evening. His girlfriend, Jolene Smykalski, noticed a reddening or inflammation of the child's vaginal area when getting her ready for bed. The child was taken to the hospital, where a sexual assault exam was positive for the presence of sperm.

Brenda and the twins spent the morning of December 3 at home. Her fiance, Neal Hopke, left for work at 2:20 p.m. He denied abusing the child and stated no other males had been around her that day. Brenda testified she took the children in the afternoon to the bank and to a friend's house, where there were no adult males.

According to William's testimony, he picked K.H. up after supper, arriving at 6:30 or 6:45 and leaving around 7:15 p.m. He then drove to his parent's house. His stepfather was not alone with K.H. and denied committing sexual abuse. From there William drove home, arriving around 8:00 p.m. He testified he made no stops on the way home and denied any sexual contact with the child. He gave blood and saliva samples for possible matching with the sample. There was insufficient seminal fluid to match the sample with the blood types of any of the possible perpetrators of the abuse.

William testified that the redness in K.H.'s vaginal area was discovered just before 9:00 p.m. She was immediately taken to the hospital. A vaginal swab was taken at 11:01 p.m., which tested positive for sperm. The lab technician called a co-worker over to verify it. She testified about 40% of the sperm were "motile," or moving.

Jordan police were called and ordered a BCA sexual assault exam. This test proved negative. Photographs were taken several hours later of the vaginal area. The police officer testified the coloration had faded about 50% from the time he first saw the child. William and Jolene testified the coloration had not subsided that much.

Two expert medical witnesses testified. Dr. Milroy, a specialist in obstetrics and gynecology, stated that sperm survival is limited to 12–14 hours. He stated it was not unusual that the BCA test was negative. He testified the decrease in coloration largely ruled out causes other than trauma consistent with sexual abuse.

Dr. Garry Peterson, Hennepin County medical examiner, was called as a witness by Brenda. He testified that sperm lose motility very rapidly, usually within six hours, and that the 40% motility figure given by the lab technician indicated very recent deposition, within two to three hours of the exam. On cross-examination, he estimated the average life of sperm deposited in a girl of K.H.'s age to be seven to nine hours.

The trial court also heard evidence of developmental delays experienced by both twins, a problem first recognized following the alleged abuse. Development Assessment Summaries done in March, 1986, showed both twins to be from a year to a year-and-a-half behind in all areas.

A custody evaluation conducted by Scott County Human Services recommended awarding permanent custody to William, based on the sexual abuse incident and on the developmental delays occurring while Brenda had custody. The evaluator stated her opinion that the child's custodian is responsible for the child's exposure to sexual abuse even if it occurs outside of her presence. She stated that Brenda continued to exhibit denial of the abuse, and showed inadequate concern. She felt Brenda would not follow through on recommendations for developmental therapy. The evaluator acknowledged it was possible the sexual abuse had occurred after William picked up K.H. for the evening. She also admitted that developmental delays may occur in twins or in children with low birth weight.

William testified that the children, while in Brenda's care, were poorly clothed, dirty and sometimes inadequately fed. He testified to four incidents showing negligent supervision. A number of witnesses for Brenda testified she took proper care of the children. William had previously made complaints to Human Services, which it had not found to be substantiated. The custody evaluation concluded that the developmental delays would support the claim of neglect.

The trial court found that K.H. was sexually abused "while in the care of the mother." It found the children had experienced developmental delays while in her custody. It found the children were endangered in Brenda's home, that a significant change of circumstances had occurred, and that the harm of a change of custody was "greatly outweighed" by the advantages. The court amended the dissolution decree to award permanent custody of all three children to William.

## ISSUE

Was the evidence sufficient to support a modification of custody?

## ANALYSIS

■ Brenda does not contest the sufficiency of the court's findings to support its modification of custody. *See* Minn.Stat. § 518.18(d)(iii) (1986). She does contend there was no showing that any sexual abuse endangers the physical or emotional health of the children. This court, however, has indicated that sexual abuse is sufficient to show endangerment of physical and emotional health. *M.N.D. v. B.M.D.,* 356 N.W.2d 813, 816–17 (Minn.Ct. App.1984) (affirming restrictions on visitation); *see also Simonson v. Simonson,* 292 N.W.2d 12, 13 (Minn.1980) ("endangerment" language cited to support reversal of custody award to mother cohabiting with a man who had a record of child molesting). Brenda's primary contention, however, is that any sexual abuse was not shown to have occurred while K.H. was in her care.

The party moving for a modification of custody has the burden of proving that a significant change of circumstances has occurred which endangers the physical or emotional health of the child. *Englund v. Englund,* 352 N.W.2d 800, 802 (Minn.Ct. App.1984). The statute requires a showing of actual endangerment. *Meier v. Connelly,* 378 N.W.2d 812, 816 (Minn.Ct.App. 1985).

Here, the evidence was sufficient to establish that sexual abuse occurred. Brenda's alternative explanation for the discoloration, a rash or yeast infection, was not supported by the medical evidence.

The trial court was confronted with a close factual question in deciding when the sexual abuse occurred. The medical testimony did not rule out either party as the responsible custodian. The sample obtained was not sufficient to match blood types, and interviews with the child furnished no information on the identity of the perpetrator. The trial court had to weigh the medical evidence, the testimony regarding access and the denials given by possible perpetrators. It is not for this court to substitute its judgment for that of the trial court on factual determinations almost entirely dependent on the credibility of the witnesses. *Wehner v. Wehner,* 374 N.W.2d 569, 572 (Minn.Ct.App.1985).

■ The trial court found that both twins experienced developmental delays while in Brenda's custody, but it is unclear how much weight the court placed on this factor. The court had the benefit of a custody evaluation assessing all relevant factors and recommending a modification of custody. *See* Minn.Stat. § 518.167 (1986).

Moreover, the trial court properly considered William's greater awareness of the twins' developmental problems as a factor indicating that the harm caused by the change of custody would be outweighed by its advantages. *See* Minn.Stat. § 518.- 18(d)(iii); *see also Trebelhorn v. Uecker,* 362 N.W.2d 342 (Minn.Ct.App.1985) (ability to foster development of a young child may be a factor in an initial custody decision).

## DECISION

The trial court did not abuse its discretion in ordering a modification of custody.

Affirmed.