*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1322**

State of Minnesota,
Respondent,

vs.

Ricardo Lopez Bibiano,
Appellant.

**Filed June 15, 2026
Affirmed
Smith, Tracy M., Judge**

Sibley County District Court
File No. 72-CR-24-214

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Donald E. Lannoye, Sibley County Attorney, Gaylord, Minesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Eva F. Wailes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Connolly, Judge; and Smith, Tracy M., Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

On direct appeal from the final judgment of conviction for two counts of first-degree criminal sexual conduct following a bench trial, appellant Ricardo Lopez Bibiano argues that respondent State of Minnesota failed to prove his guilt beyond a reasonable doubt.

Specifically, he argues that the evidence is insufficient because the testimony of the complainant—his stepdaughter—was not corroborated. We affirm.

**FACTS**

The following evidence was introduced at trial.

**C.J.'s Testimony**

Bibiano's wife, C.J., testified as follows. Bibiano and C.J. began a relationship in 2013. The following year, Bibiano moved in with C.J. and her daughter, S.J., who was around one year old. C.J. and Bibiano eventually married and had two joint children. C.J. and Bibiano sometimes fought, and he moved in and out of her house multiple times. When C.J. began working nights, Bibiano would be the only adult home watching the children. Around 2023, C.J. started noticing a change in S.J.'s personality and that she had stopped enjoying things and had begun fighting with her siblings more. In August 2024, when S.J. was 11 years old, Bibiano told C.J. that S.J. had "started her period." C.J. asked S.J. about it, and S.J. told C.J. that her period had lasted more than a week. When it continued for a few more days, C.J. took S.J. to a clinic. At the clinic, while C.J. was present, S.J. told a nurse that her stepfather had been sexually abusing her.

**S.J.'s Testimony**

S.J. testified as follows. S.J.'s mother worked nights, and there were times when Bibiano would be alone with S.J. at night while the other children were asleep. In 2019, when S.J. was seven years old and in first grade, Bibiano "would put his hand on [her] chest and he would grab [her] butt and . . . over [her] clothes he would touch [her] vagina and he would kiss [her] on [her] cheek and [her] mouth." This would happen about three

2

times a week when she was in first grade, and it continued through second grade. When S.J. was eight years old, Bibiano began touching her chest area, vagina, and butt under her clothes, and that conduct continued in third grade. Bibiano would also undress S.J. and "try putting his penis inside of [S.J.]." Bibiano put his penis in S.J.'s vagina three times, but other times she "would like move away and stuff and kick him and try to put [her] clothes back on so he wouldn't do anything." This continued into fourth grade, when it stopped for a period of time and then resumed, continuing through fifth grade. In July 2024, when S.J. was in fifth grade, Bibiano's conduct stopped. S.J. initially did not tell anyone about the abuse because she was scared of Bibiano, but she eventually told the nurse at the clinic. During cross-examination, S.J. acknowledged that her mom and Bibiano would have verbal arguments, that S.J.'s mom was upset because Bibiano was dating S.J.'s mom's sister, and that S.J. was happier now that Bibiano had moved out.

**Police Interview**

A police officer was called to the clinic the day that S.J. disclosed the sexual abuse, and he interviewed S.J. and C.J. A transcript of the interview was submitted into evidence at trial. S.J.'s and C.J.'s statements in the interview are consistent with their trial testimony.

**Forensic Examination**

After S.J. was interviewed by the police officer, she was referred for a forensic interview with a social worker. The social worker, D.K., testified at trial regarding her training and experience and that, in August 2024, she conducted the forensic interview of S.J. The transcript of D.K.'s interview of S.J. was then admitted into evidence. As reflected in the transcript, S.J.'s account in the forensic interview was consistent with S.J.'s

3

testimony at trial. In the interview, S.J. also described specific instances of abuse, including when Bibiano would touch her while she was sleeping, when he would touch her in the shower, and one instance when he tried to put his penis in her vagina and she felt a small amount of liquid. S.J. stated in the interview that the abuse originally occurred "almost every single day" but slowed to once or twice a month.

**Bibiano's Testimony**

Bibiano testified in his own defense as follows. Bibiano never shared a bed with S.J. and he would never wake her up at night to sleep with him. He and S.J. had a good relationship, but S.J. hated her younger half-sister (Bibiano and C.J.'s daughter). In 2020, C.J. kicked Bibiano out, and he went to live with C.J.'s sister. Bibiano did not see his children for "probably around one year" after he moved out and did not have any of the children overnight from 2020 to August 2024. In August 2024, the children—including S.J.—stayed with him for two weeks. During that time, Bibiano did not sleep in the same bed with S.J., did not touch her inappropriately, and did not discuss S.J.'s period with C.J. C.J. must have manipulated S.J. into making these allegations. C.J. thought Bibiano was in a relationship with C.J.'s sister, but he was not.

**Charges, Conviction, and Sentence**

Bibiano was charged with two counts of first-degree criminal sexual conduct in violation of Minnesota Statutes section 609.342, subdivision 1(h)(iii) (2020). Following the bench trial, the district court filed its findings of fact, conclusions of law, and order, finding Bibiano guilty on both counts. The district court found that "[Bibiano's] testimony

was not credible." Bibiano was sentenced to 172 months in prison and received a ten-year term of conditional release.

This appeal follows.

**DECISION**

Bibiano's only argument on appeal is that the evidence is insufficient to support his conviction because it rests solely on S.J.'s uncorroborated testimony.

"In considering a claim of insufficiency of the evidence, [the reviewing court] must ascertain whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Jones*, 4 N.W.3d 495, 501-02 (Minn. 2024) (quotation omitted). "[Appellate courts] use the same standard of review in bench trials and in jury trials in evaluating the sufficiency of the evidence." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011).

The applicable sufficiency-of-the-evidence standard of review depends on whether the conviction rests on direct or circumstantial evidence. *See State v. Firkus*, 31 N.W.3d 468, 478 & n.6 (Minn. 2026). "Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Jones*, 4 N.W.3d at 501 (quotations omitted). Direct evidence includes witness testimony "when it reflects a witness's personal observations and allows the jury to find the defendant guilty without having to draw any inferences." *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016). Here, the findings of fact supporting the conviction were derived from S.J.'s testimony describing the offenses. This is direct evidence.

"When a conviction is based on direct evidence, the traditional standard for evaluating the sufficiency of the evidence applies . . . ." *Jones*, 4 N.W.3d at 501. Under the traditional standard, the reviewing court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989).

A person commits first-degree criminal sexual conduct when they engage in multiple instances of sexual penetration over an extended period of time with a person under age 16 with whom they have a significant relationship. Minn. Stat. § 609.342, subd. 1(h)(iii). "Significant relationship" includes a relationship between a stepdaughter and a stepfather. Minn. Stat. § 609.341, subd. 15(1) (2020).

Bibiano argues that S.J.'s testimony is insufficient on its own to sustain his conviction because it was not corroborated. He emphasizes that there were no other witnesses to the alleged conduct and no physical evidence.

It is well-settled that, generally, "a conviction can rest on the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quoting *State v. Hill*, 172 N.W.2d 406, 407 (Minn. 1969)); *see also State v. Nestaval*, 75 N.W. 725, 726 (Minn. 1898) ("It was not the duty of the jury to count the number of witnesses, and render a verdict in accordance with the majority of them, but to weigh the testimony, and render a verdict accordingly."). And specifically for prosecutions of criminal sexual conduct, Minnesota Statutes state that "the testimony of a victim need not be corroborated." Minn. Stat. § 609.347, subd. 1 (2020).

6

But "the absence of corroboration in an individual case may well call for a holding that there is insufficient evidence upon which a jury could find the defendant guilty beyond a reasonable doubt." *State v. Ani*, 257 N.W.2d 699, 700 (Minn. 1977) (quotation omitted). Corroboration may be required when there are "additional reasons to question the victim's credibility," *Foreman*, 680 N.W.2d at 539, or "unusual circumstances that would justify a determination that [the victim's] testimony was not reliable," *State v. Balsley*, 999 N.W.2d 880, 887 (Minn. App. 2023), *aff'd*, 10 N.W.3d 671 (Minn. 2024).

Bibiano cites three cases in which convictions based on a single witness were overturned due to "additional reasons to question the victim's credibility." In *State v. Huss*, the Minnesota Supreme Court reversed a conviction for second-degree criminal sexual conduct because an expert testified that the sole child witness was heavily influenced by books and a video about sexual abuse. 506 N.W.2d 290, 292-93 (Minn. 1993). In *State v. Langteau*, the supreme court reversed a conviction of aggravated robbery because there were significant holes in the alleged victim's testimony. 268 N.W.2d 76, 77 (Minn. 1978). And in *State v. Gluff*, the supreme court reversed a conviction of aggravated robbery because the sole witness had limited time to observe the suspect and there were flaws in the identification process. 172 N.W.2d 63, 65 (Minn. 1969).

Each of these cases contained unusual circumstances or additional reasons in evidence to doubt the witness's credibility. This is not the case here. There is no evidence that S.J.'s testimony was affected by any suggestive material or had inconsistencies or unexplained holes in her version of events.

Bibiano argues that S.J. may have fabricated her story to keep Bibiano from moving back in with her. He cites as support S.J.'s testimony that she is happier without Bibiano in the house, the likelihood that Bibiano and C.J.'s fighting caused S.J. stress, S.J.'s anger towards Bibiano for treating S.J.'s half-brother poorly, and S.J.'s jealousy of her younger sister since, unlike her sister, S.J. did not have a relationship with her biological father. But none of these asserted facts present an "unusual circumstance" justifying doubt about S.J.'s testimony. It is not surprising that S.J. is happier without Bibiano in the house given the prolonged abuse she described. And while S.J. may have disliked other things about Bibiano's conduct, there is no evidence in the record showing that they led her to fabricate her testimony. And to the extent that Bibiano's argument rests on his own testimony, the district court found his testimony not credible. Bibiano's argument amounts to nothing more than speculation.

Because there are no unusual circumstances or additional reasons to doubt S.J.'s credibility, her uncorroborated testimony is sufficient to sustain Bibiano's conviction.[1] *See* Minn. Stat. § 609.347, subd. 1.

**Affirmed.**

---

[1] The parties disagree on whether S.J.'s testimony was corroborated. Because we determine that S.J.'s uncorroborated testimony is sufficient to sustain Bibiano's conviction, we need not discuss whether other evidence corroborated it.